607 P.2d 1

**STATE of Arizona, Appellee,**

v.

**Willie James SOLOMAN, Jr., Appellant.**

**No. 3833–2.**

Supreme Court of Arizona,
In Division.

Jan. 9, 1980.

Rehearing Denied Feb. 26, 1980.

**19**

Robert K. Corbin, Atty. Gen., William J. Schafer, III, Chief Counsel, Crim. Div., Asst. Atty. Gen., Gregory A. McCarthy, Asst. Atty. Gen., Phoenix, for appellee.

Michael A. Mulhall, Phoenix, for appellant.

GORDON, Justice:

Defendant Willie James Soloman, Jr., appeals from a judgment of conviction of first degree burglary [1] and a sentence of thirty years to life imprisonment, defendant having been convicted of a prior felony.[2] Taking jurisdiction pursuant to A.R.S. § 13–4031, we affirm.

The victim, Eva Macias, testified that at about 3:00 a. m. on September 23, 1976, two men entered her Phoenix home. One man, identified as defendant, raped her at knife point, and the two men then took various items from the apartment and left. Defendant was arrested later that day and an information was subsequently filed charging him with armed first degree burglary and armed first degree rape. Defendant pled guilty, pursuant to a plea agreement, to first degree rape while armed with a knife. He was sentenced to thirty years to life imprisonment.

On appeal, this Court remanded the case for an evidentiary hearing to determine whether defendant was aware of certain special conditions of his sentence at the time of his guilty plea. *State v. Soloman*, 117 Ariz. 228, 571 P.2d 1024 (1977). At the subsequent hearing, the trial court was not satisfied that defendant understood the special conditions of his sentence at the time he entered his guilty plea. The judgment was therefore set aside, the plea agreement vacated, and the matter set for trial.

On February 16, 1978, the day before Soloman's trial was to commence, the prosecutor learned that various items of real evidence concerning the crime had been de-

1. A.R.S. § 13–302 of the former Criminal Code, effective at all relevant times.

2. A.R.S. § 13–1649 of the former Criminal Code.

stroyed by the police. This destruction occurred when the county attorney's office mistakenly sent a letter to the police, before the period of appeal from defendant's conviction had elapsed, advising the police that the evidence held in the police property room was no longer needed by the state. The evidence which was destroyed included a pair of sandals, a knife which defendant was alleged to have used in the crime, items of food and a blanket believed to have been stolen by Soloman, clothing belonging to both Soloman and the victim, and a rape kit containing medical evidence obtained from the victim shortly after the crime. In addition, it appears that a photograph display shown to the victim, by which she first identified defendant, was not preserved.

On February 17, 1978, defense counsel was notified that the evidence had been destroyed. On that same day, a jury was impaneled for defendant's trial.

On February 22, defendant made a motion in limine asking the court to preclude all testimony concerning the destroyed evidence. The court granted this motion as to all evidence except the knife. The court reserved its ruling on the knife, because the jury had already become aware of the knife when it was questioned on voir dire.

On February 23, defendant moved for a dismissal based on the destruction of evidence. The motion was granted, and the state filed a petition for a special action in this Court. We held, in *State ex rel. Hyder v. Hughes*, 119 Ariz. 261, 580 P.2d 722 (1978), that under the circumstances of this case, both dismissal and suppression of testimony referring to destroyed evidence were improper. The order that was sent to the trial court, dated March 15, 1978 said:

" * * *

"FURTHER ORDERED: Respondent trial court is prohibited from dismissing this action.

"FURTHER ORDERED: The respondent Superior Court Judge is to proceed with the trial."

No mention was made in that order of the motion in limine to suppress testimony. The full opinion of the Court in this matter, which did address the suppression issue, was not filed until June 27, 1978, after defendant's trial had ended.

On March 20, 1978, a hearing was held in trial court concerning the effect of our March 15 order on the defendant's motion in limine. The trial court finally ordered that testimony concerning all destroyed evidence except the knife would be inadmissible. On March 22 defendant moved for suppression of testimony referring to the knife and for a mistrial, since the present jury had already heard reference to the knife. The trial court granted the mistrial and dismissed the jury but also ordered that testimony concerning all destroyed evidence was to be allowed.

On March 23 defendant, contending that a trial with a new jury would improperly place him twice in jeopardy, moved for a dismissal. His motion was denied, a new jury was impaneled, and the trial proceeded. The jury found defendant guilty of burglary of the first degree, but was unable to reach a verdict on armed rape, rape, or armed burglary. Pursuant to an agreement of the parties, defendant admitted a prior felony conviction, and, in return, the state moved for a dismissal of the charges on which no verdict was reached.[3] Defendant was then sentenced to thirty years to life imprisonment.

Soloman raises two issues on appeal:

(1) Was his right not to be twice placed in jeopardy violated?

(2) Was he deprived of due process of law by the trial which proceeded in the absence of the evidence destroyed by the state?

### Double Jeopardy

Defendant claims that when the first jury was impaneled he was placed in jeopardy, and when the trial court declared

---

3. The dismissal was without prejudice. The state agreed not to reprosecute unless the present judgment were reversed on appeal.

a mistrial and proceeded to trial with a new jury, he was improperly placed in jeopardy for a second time. The right not to be twice placed in jeopardy of life or limb for the same offense, guaranteed by the Fifth Amendment to the Constitution of the United States, is applicable to the states through the Fourteenth Amendment. *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969); *Klinefelter v. Superior Court*, 108 Ariz. 494, 502 P.2d 531 (1972). Moreover, it is now clear that the federal rule that jeopardy attaches as soon as a jury is impaneled is of constitutional magnitude. *Crist v. Bretz*, 437 U.S. 28, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978).[4] We thus find that jeopardy did attach in this case when the first jury was impaneled, and we must now consider whether the mistrial order impermissibly placed Soloman in jeopardy twice.

In the absence of judicial overreaching or prosecutorial misconduct aimed at preventing an acquittal, a mistrial granted at defendant's request does not ordinarily bar a later prosecution. *United States v. Jorn*, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971); *see State v. Parker*, 116 Ariz. 3, 567 P.2d 319 (1977). This is true even when defendant's request for a mistrial is prompted by a judicial or prosecutorial error. *United States v. Jorn, supra.*

In the instant case we note initially that defendant moved for a mistrial. Defendant does not claim, nor do we find, that judicial overreaching or misconduct by the state caused this motion. Defendant argues, however, that his motion for a mistrial was coupled with his motion in limine to suppress testimony about the knife and that the granting of the mistrial motion alone was over his "vehement protest." The record does not support this contention. It is true that defendant, both in his written motion and at the March 22 hearing, stated that the mistrial and the suppression of testimony about the knife were related. But at the time when the trial court first declared a mistrial, the evidentiary ruling

of the previous day, that testimony concerning all destroyed evidence except the knife was prohibited, had not been changed. At this point in the hearing defendant raised no objection, although without additional relief the mistrial would accomplish nothing for him. Immediately after declaring a mistrial the court, upon a motion by the state, ordered that no testimony concerning destroyed evidence should be precluded. It was at this point that defendant objected. His objections were aimed, however, not at the mistrial order but at the evidentiary ruling which made the mistrial useless to defendant. We note further that at a later point in the hearing the court repeated its mistrial order. We cannot discern from the record whether the jury had already been dismissed after the first order, but the defense, even at this time, failed to raise a clear objection to the mistrial as such and not to what it considered to be an unfavorable evidentiary ruling.

It is apparent from the record that both parties and the court were troubled and confused by a hotly disputed and complex legal problem. Under these circumstances, when a defendant moves for a mistrial as a complement to additional relief, he bears the responsibility of clearly objecting to the granting of a mistrial where the auxiliary relief has not also been granted. In the absence of such an explicit objection, a defendant bears the risk that, due to his own motion, a mistrial will be granted which is unnecessary and unhelpful to him. We hold that defendant was not unconstitutionally twice placed in jeopardy.

*Deprivation of Due Process of Law*

Defendant also contends that he was deprived of due process when he was tried without the items of demonstrative evidence prematurely destroyed by the state. When the present case was before this Court in a special action prior to trial, we noted that defendant had initially been notified of the existence of the evidence and

---

4. This decision overrules our own holding in *State v. Mojarro Padilla*, 107 Ariz. 134, 483 P.2d 549 (1971), cert. denied, 404 U.S. 1049, 92 S.Ct. 718, 30 L.Ed.2d 740 (1972).

had been given an opportunity to inspect it. No request for inspection was made prior to the trial. *State ex rel. Hyder v. Hughes*, 119 Ariz. 261, 580 P.2d 722 (1978). We then held that, in the absence of bad faith or connivance by the state, in order to establish that he has been deprived of due process, defendant must show that he has been prejudiced by the loss of evidence. *State ex rel. Hyder v. Hughes, supra. See Scales v. City Court of Mesa*, 122 Ariz. 231, 594 P.2d 97 (1979); *State v. Hannah*, 120 Ariz. 1, 583 P.2d 888 (1978); *State v. Cruz*, 123 Ariz. 497, 600 P.2d 1129 (App.1979).

In the instant case there is neither an allegation nor evidence of bad faith or connivance on the part of the state. We therefore must consider whether defendant has been prejudiced by the destruction of evidence. Before considering defendant's claim of prejudice resulting from the destruction of evidence, a more complete exposition of the facts is necessary.

Eva Macias testified that she was awakened at her residence at 3:00 a.m. by a man, whom she later identified as defendant, in her bed. She saw another man come through her window and enter her room. The victim recognized the second intruder as a man she knew as Gino who lived across the street from her former residence, which was nearby. Macias testified that the defendant held a small knife to her throat and raped her. The men then rummaged about the house and took some food and a blanket before leaving.

Detective Nolan of the Phoenix Police Department testified that later that morning he followed distinctive footprints in wet ground from the victim's house to the residence of Gino. Other police were already outside that house due to Macias' earlier identification of Gino as one of the intruders. Detective Nolan entered and found Gino asleep and defendant curled up and hiding in a small cardboard box. The detective observed what appeared to be blood on defendant's shorts. Eva Macias had been menstruating at the time of the rape. Several items of food were found with defendant which Detective Nolan testified were similar to the items described by Macias as taken from her residence.

A board, which Macias said had been used to cover her bedroom window, had been removed and was found outside of her house. A fingerprint, which expert testimony identified as defendant's was found on the board.

Defendant was taken into custody, read his *Miranda* rights, and questioned. He admitted having spent the night with Gino but claimed that they had been playing football, and he had received scratches on his arms which caused the blood to appear on his shorts.

■ Defendant contends that he was prejudiced by the loss of several specific items of evidence. These items are the knife allegedly used by defendant, the allegedly stolen food and blanket, and a pair of sandals found in the house where defendant was hiding. Defendant does not claim that these items could have been used affirmatively to establish his innocence, and the fact that defense counsel, aware of the existence of the evidence, made no request to examine any of it prior to trial supports an inference that the evidence was not exculpatory. *Cf. State v. Hannah, supra.* The thrust of defendant's argument appears to be that the testimony concerning the above evidence could have been challenged more effectively by defendant had these items been physically before the jury.

Defense counsel was able to establish, in cross-examining Eva Macias, that she had identified the knife as the one used by defendant, because the police brought it to her and told her it was the one in question. Defendant also elicited that the allegedly stolen food had never been shown to the victim for identification. There was no testimony that the stolen blanket was found with defendant, and Detective Nolan stated that he did not know to whom the sandals belonged.

We note that the court gave the jury the following instruction, approved in *State v. Willits*, 96 Ariz. 184, 393 P.2d 274 (1964):

"If you find that the plaintiff, the State of Arizona, [its officers or agents, have] destroyed, caused to be destroyed,

or allowed to be destroyed any evidence, whose contents or quality are in issue, you may infer that the true fact is against the State's interests."

The jury may have concluded that the knife and food items found with defendant were not the ones described by the victim. They may also have found that the sandals did not belong to defendant and that they did not produce the footprints followed by Detective Nolan. However, these weaknesses in the state's case do not adversely affect the other evidence which overwhelmingly pointed to defendant's guilt of the crime of burglary. It would be pure speculation to consider whether the physical presence of the destroyed evidence would have discredited the state's case to a greater degree than it had already been discredited by defense counsel's cross-examination and by the *Willits* instruction. To indulge in such speculation would be to obviate the requirement that defendant must demonstrate prejudice resulting from the loss of evidence.

We find no fundamental error in the proceedings. *See* A.R.S. § 13–4035(B); *State v. Rose*, 121 Ariz. 131, 589 P.2d 5 (1978). The judgment and sentence are affirmed.

HOLOHAN, V. C. J., and HAYS, J., concur.