609 P.2d 564

**STATE of Arizona, Appellee,**

v.

**Robert A. SCHILLEMAN, Appellant.**

No. 4897.

Supreme Court of Arizona,
In Banc.

March 25, 1980.

Robert K. Corbin, Atty. Gen., William J. Schafer, III, Chief Counsel, Crim. Div., Greg A. McCarthy, Asst. Atty. Gen., Phoenix, for appellee.

Friedlander & Friedlander, P. C., by Susan O. Friedlander, Scottsdale, for appellant.

GORDON, Justice:

Defendant Robert A. Schilleman was convicted, after a jury trial, of first degree rape and first degree burglary. He appeals from the judgments and from concurrent sentences of ten to fifteen years imprisonment for rape and three to six years imprisonment for burglary. Taking jurisdiction

pursuant to Rule 47(e)(5), Rules of Supreme Court, we affirm.

The victim testified at trial that she went to bed at about 11:30 p. m. on August 16, 1978, and that sometime thereafter she was awakened by a man placing a sheet over her head. The man then tied the victim's hands behind her back and raped her. The victim was unable to see her attacker. When the man left, the victim was able to untie her hands and call the police.

One of the investigating police officers testified that the glass on the back door of the victim's house had been broken from the outside and that he believed the rapist had entered the residence by this door. A police identification technician testified that he had found a latent palm print on the inside of the back door, and that the print was made by an arm reaching through the hole in the glass on the door. Two police experts identified the palm print as defendant's.

Julie Edwards, who lived on the same street as the victim, testified that at about 1:30 a. m. on August 17, 1978, she was seated in a van parked across from her apartment and near the victim's house. She saw a man jump out from behind some bushes located between the van and the victim's house. The man ran toward the van and continued running past the van down the street. Edwards identified the defendant as the man she had seen.

Defendant raises three issues on appeal:

(1) Whether Edwards' in-court identification should have been excluded, because it was tainted by an unduly suggestive pre-trial identification procedure;

(2) Whether the trial court incorrectly instructed the jury on the weight to be given Edwards' testimony;

1. Defendant was originally charged with robbery and lewd and lascivious acts in addition to rape and burglary. The jury in an earlier trial acquitted him of the first two charges but was unable to reach a verdict on the other two. A mistrial was declared, and defendant was re-tried.

2. Defendant also claimed that the state had violated discovery rules by not revealing that

(3) Whether the trial court should have dismissed the case, because the police destroyed certain fingerprint evidence.

## EXCLUSION OF IN–COURT IDENTIFICATION

On January 23, 1979, immediately before defendant's first trial [1] was to begin, Julie Edwards made an identification of defendant when she observed him sitting at the defense table in the courtroom. Defendant, claiming that the pre-trial identification had been unduly suggestive, moved to have Edwards' in-court identification suppressed.[2] The trial court held a *Dessureault* [3] hearing at which it determined that an in-court identification would not be tainted by the pre-trial observation of defendant by Edwards.

Edwards testified at the *Dessureault* hearing that prior to trial the prosecutor asked her to look into the courtroom through the back door to see if she recognized anyone. This was the only identification procedure in which she had participated after the crime. She saw six people inside the courtroom, including defendant, but only defendant and his attorney had light colored hair like the person she had observed at the time of the crime. The trial court made no specific finding whether this procedure was unduly suggestive. Assuming, *arguendo*, that the pre-trial identification was unduly suggestive, Edwards' in-court identification was still properly admissible if the trial court was correct in its finding that the latter identification was not tainted by the former. *See State v. Dessureault*, 104 Ariz. 380, 453 P.2d 951 (1969), *cert. denied*, 397 U.S. 965, 90 S.Ct. 1000, 25 L.Ed.2d 257 (1970).

Edwards would make an in-court identification. The trial court found that this claim did not warrant suppression, and defendant has not raised the contention on appeal.

3. *State v. Dessureault*, 104 Ariz. 380, 453 P.2d 951 (1969), *cert. denied*, 397 U.S. 965, 90 S.Ct. 1000, 25 L.Ed.2d 257 (1970).

■ An in-court identification is not tainted by an unduly suggestive pre-trial identification if, in view of the totality of the circumstances, the in-court identification is reliable. *See State v. Strickland,* 113 Ariz. 445, 556 P.2d 320 (1976). The following factors are to be included in considering whether an in-court identification is reliable: the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and confrontation. *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); *see, e. g., State v. Smith,* 123 Ariz. 243, 599 P.2d 199 (1979).

■ Edwards testified at the *Dessureault* hearing that a street lamp provided good lighting, that the man she saw passed within six feet of her, and that she got a good look at his face. She stated that her attention was drawn to him because he was running quickly, late at night. She watched him from the time he first appeared to be jumping out from some bushes until he disappeared from view, running down the street. Edwards initially described the man she saw to police as a white male with a mustache and light blonde, shoulder-length hair, between, five feet ten inches and six feet tall, with a very thin build. Although defendant claims he is somewhat taller and not as thin as Edwards described, the description was reasonably accurate. Julie Edwards testified that, when she first looked into the courtroom, she was not positive whether anyone inside was the man she had previously observed, but several minutes later, after Edwards had related her image of the running man to the individuals in the courtroom, she was certain that defendant was the man who had run by her van on August 17, 1978.

There are several factors which reflect unfavorably on the reliability of Edwards' in-court identification. Edwards testified that she saw the running man for only about ten seconds, and part of the time his back was to her as he ran down the street. The man was moving very quickly as she observed him. She initially told police she was not sure she would be able to identify the man if she saw him again. Finally, five months had elapsed between the crime and the time when she observed defendant in the courtroom.

We have repeatedly stated that the issue whether an in-court identification has been tainted by a pre-trial procedure is a preliminary matter for the trial court and that the trial court's finding will not be overturned on appeal absent clear and manifest error. *See, e. g., State v. McGill,* 119 Ariz. 329, 580 P.2d 1183 (1978). In this case, the trial court was justified in finding that Julie Edwards' in-court identification of defendant was not tainted.

## INSTRUCTIONS CONCERNING EDWARDS' IN-COURT IDENTIFICATION

■ Defendant contends that the trial court committed error by rejecting his proposed instruction labeled (B) by substituting its own instruction. The rejected instruction was the following:

"Defendant's Requested Jury Instruction No. (B)

"Before returning a verdict of guilty you must be satisfied beyond a reasonable doubt that the in-court identification was independent of the pretrial identification. If it was not derived from an independent source, you must then determine from other evidence in the case beyond a reasonable doubt whether the defendant is the guilty person. In determining if the in-court identification was from an independent source you may consider whether the pretrial identification procedures were fair or unduly suggestive of the defendant. *State v. Dessureault,* 104 Ariz. 380, at 384, 453 P.2d 951 at 955 (1969)."

The trial court gave this instruction instead:

"In considering the correctness of the in-court identification of the defendant, you should consider whether such identifica-

tion is tainted by any identification made of the defendant by witnesses before testifying. If you believe that the circumstances under which such pre-testimonial identification was made were so suggestive as to prevent the witness from making an independent identification of the defendant in-court, then you should not give the witness' identification any weight in considering whether or not the defendant is guilty of either of the crimes charged."

Defendant's claim of error is based on the trial court's use, in its own instruction, of the phrase "so suggestive as to prevent the witness from making an independent identification" instead of the phrase "satisfied beyond a reasonable doubt that the in-court identification was independent of the pretrial identification" in defendant's Instruction (B).

> In *State v. Dessureault, supra,* we said: "*Third,* if requested, the court must instruct the jury that before returning a verdict of guilty it must be satisfied beyond a reasonable doubt that the in-court identification was independent of the previous pretrial identification or if not derived from an independent source, it must find from other evidence in the case that the defendant is the guilty person beyond a reasonable doubt." *State v. Dessureault,* 104 Ariz. at 384, 453 P.2d at 955.

Whether the trial court's modified version of defendant's requested instruction is fatally defective in light of the requirements of *Dessureault,* cited above, we need not decide. Defendant may not claim on appeal that the trial court committed reversible error by giving its own instruction, because defense counsel's objection did not state "distinctly the matter to which he object[ed] and the grounds of his objection." Rule 21.3(c), Rules of Criminal Procedure, 17 A.R.S. *See State v. Toney,* 113 Ariz. 404, 555 P.2d 650 (1976); *cf. State v. Kennedy,* 122 Ariz. 22, 592 P.2d 1288 (App.1979). The record shows that trial defense counsel's [4] only objection to the trial court's pro-

posed modification was this: "I would just object for the record to all of [the instructions] that I did not request. Nothing, further, your honor." [5]

The purpose of requiring a specific objection is to afford the trial court an opportunity to pass upon the objection. *See State v. Winter,* 109 Ariz. 505, 513 P.2d 934 (1973). Although Instruction (B) cited *State v. Dessureault, supra,* as authority we do not believe that a reading of *Dessureault* would inform the trial judge of defendant's precise objection. It was not apparent that *Dessureault* mandates the giving of Instruction (B) exactly as requested. In this situation, defense counsel cannot make a general objection and then expect to preserve a claim of error based on any variation between the trial court's language and that of the requested instruction.

As the comment to Rule 21.3(c) indicates, the rule does not preclude appellate review of fundamental error. *Cf. State v. Galbraith,* 114 Ariz. 174, 559 P.2d 1089 (App.1976). The trial court instructed the jury to disregard Edwards' in-court identification if it was tainted by her pretrial identification. Other instructions made it clear to the jury that the state must prove its entire case against defendant, which would include defendant's identity, beyond a reasonable doubt. Any prejudice to defendant caused by the trial court's modification of the requested instructions did not undermine the foundation of his case or deprive him of a right essential to his defense. *See State v. Galbraith, supra.* We therefore find no fundamental error.

## DESTRUCTION OF EVIDENCE

Soon after the crime was reported, a police identification technician, Hubert Dorsey, went to the victim's residence and dusted various items for fingerprints. Dorsey lifted approximately fifteen latent fingerprints from the crime scene. This was done by placing tape over the dusting powder

---

4. We note that appellate counsel did not represent defendant at trial.

5. Trial counsel made essentially the same statement to the same judge at the first trial.

where a print appeared to be and then transferring the impression on the tape onto a card.

When he returned to the police station, Dorsey examined the cards and concluded that only one card contained a print which was sufficient for identification purposes. All of the cards were destroyed except the one containing a usable print. This last print was later identified as defendant's.

Prior to his first trial, defendant requested that the prosecution make available for his examination all of the latent prints which Dorsey had lifted at the scene of the crime. When the prosecutor informed him that all but one of the latent lifts had been discarded, defendant, claiming a deprivation of due process, moved for a dismissal. After a hearing, the trial court found that the destroyed prints had no evidentiary value and denied the motion.

■ A defendant has not been deprived of due process because the state has destroyed evidence, unless the state has acted in bad faith or the defendant has been prejudiced by the loss. *See State v. Soloman*, 125 Ariz. 18, 607 P.2d 1 (1980). It is clear in the present case that Dorsey did not destroy the latent lifts in bad faith. His uncontradicted testimony was that he was following standard police procedures both in determining which prints were usable and in destroying the worthless ones. We note that it would be in the state's own interest to preserve all prints which might be employed to identify a criminal.

We find no reasonable possibility that defendant was prejudiced by the destruction of the lifts which Dorsey determined were unusable. *State v. Hannah*, 120 Ariz. 1, 583 P.2d 888 (1978), which defendant claims requires dismissal in the instant case, is distinguishable. In *Hannah*, the police negligently destroyed certain items of evidence found at the scene of a crime before the evidence could be examined for fingerprints. We said:

"Because tests were not made which could have been made, and because it cannot now be determined whether exculpatory evidence would have been developed, we think the trial court could conclude that [defendant] had been denied due process by the negligent destruction of the seized evidence." *State v. Hannah*, 120 Ariz. at 2, 583 P.2d at 889.

Defendant has offered no evidence that the procedures followed by Dorsey were unreliable or that Dorsey performed his job negligently. Unlike the situation in *Hannah, supra*, the unavailable evidence in this case was examined by police and found to have no value before it was destroyed. *Cf. State v. Garrison*, 120 Ariz. 255, 585 P.2d 563 (1978). Defendant points to statements made by Dorsey and by another identification technician, Frank Rodgers, and infers that one of the discarded latent lifts might have had some exculpatory value. The testimony of both technicians, taken as a whole, shows that they believed, that even this one lift was worthless, either to establish whose print it was or to show that it was not defendant's. Proof that defendant did not make the print, moreover, would not lessen the probative value of the palm print identified as defendant's.

■ Defendant stresses in his brief that Dorsey's decision to discard certain latent lifts was not subject to review and that defendant had no opportunity to independently examine those lifts. We recognize the possibility that technical determinations may be subject to error. *Cf. Scales v. City Court of Mesa*, 122 Ariz. 231, 594 P.2d 97 (1979). We do not believe, however, that due process requires the police to indefinitely preserve evidence after a qualified technician has concluded that it has no probative value, so that an as yet unknown defendant may later make his own examination of the evidence. We conclude that defendant was not deprived of due process.

We have examined the entire record and find no fundamental error. *See* A.R.S. § 13–4035(B); *State v. Rose*, 121 Ariz. 131, 589 P.2d 5 (1978). The judgments and sentences are affirmed.

STRUCKMEYER, C. J., HOLOHAN, V. C. J., and HAYS and CAMERON, JJ., concur.