844 P.2d 1152

**STATE of Arizona, Appellee/Cross-Appellant,**

**v.**

**Larry YOUNGBLOOD, Appellant/Cross-Appellee,**

**STATE of Arizona, Appellant,**

**v.**

**Joe HERRERA–RODRIGUEZ, Appellee.**

**Nos. CR–90–0053–PR, CR–89–0353–PR.**

Supreme Court of Arizona,
En Banc.

Jan. 7, 1993.

Stephen D. Neely, Pima County Atty. by Catherine M. Shovlin, Deputy County Atty., John R. Gustafson, Sp. Deputy County Atty., Tucson, for state of Ariz. in State v. Youngblood.

Daniel F. Davis, Tucson, for Youngblood.

Grant Woods, Atty. Gen. by Joseph T. Maziarz, Asst. Atty. Gen., Phoenix, for amicus curiae Arizona Atty. Gen., in State v. Youngblood.

Richard M. Romley, Maricopa County Atty. by H. Allen Gerhardt, Deputy County Atty. and John R. Gustafson, Deputy Pima County Atty., Phoenix, for state of Ariz. in State v. Herrera–Rodriguez.

Dean W. Trebesch, Maricopa County Public Defender by Paul Klapper, Deputy Public Defender, Phoenix, for Herrera–Rodriguez.

Grant Woods, Atty. Gen. by Joseph T. Maziarz, Asst. Atty. Gen., and Jessica Gifford Funkhouser, Former Chief Counsel, Crim. Div., Phoenix, for amicus curiae Arizona Atty. Gen. in State v. Herrera–Rodriguez.

Hirsh, Davis, Walker & Piccarreta by Michael L. Piccarreta, Tucson, for amicus curiae Arizona Attys. for Criminal Justice.

## OPINION

MARTONE, Justice.

These consolidated cases require us to decide whether, absent bad faith on the part of the state, failure to preserve evidence which might be exculpatory constitutes a denial of due process of law under Article 2, § 4 of the Arizona Constitution. We hold that it does not.

## I. PROCEDURAL BACKGROUND AND FACTS

### A. *Youngblood*

Youngblood was convicted of child molestation, sexual assault and kidnapping. The court of appeals reversed and ordered dismissal of all charges against Youngblood on the ground that the state violated his federal due process rights by failing properly to preserve semen samples from the victim's body and clothing. *State v. Youngblood*, 153 Ariz. 50, 734 P.2d 592 (App.1986). This court denied review. The United States Supreme Court granted the state's petition for writ of certiorari, reversed the court of appeals, and held that "unless a criminal defendant can show bad

faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Arizona v. Youngblood,* 488 U.S. 51, 58, 109 S.Ct. 333, 337, 102 L.Ed.2d 281 (1988).

The police collected samples, did not refrigerate the clothing and did not immediately perform tests on the samples taken from the victim's body. They did determine that sexual contact had occurred. What was collected was available to the defendant at trial and the defendant chose not to perform tests of his own. There was no suggestion of bad faith on the part of the police. On remand, and after having gone through the entire state and federal system once, the defendant for the first time raised a state law claim under the Arizona due process clause. Having been rebuffed on its resolution of the federal issue, the court of appeals held that Arizona due process was violated, reversed his convictions, and dismissed all charges against him. *State v. Youngblood,* 164 Ariz. 61, 790 P.2d 759 (App.1989). We granted the state's petition for review.

### B. *Herrera–Rodriguez*

Herrera–Rodriguez was charged with sexual assault, kidnapping, armed burglary and aggravated assault. After a mistrial, the trial court granted a defense motion to dismiss because the state failed to preserve a cotton swab sample from a rape kit. The motion was based upon federal and Arizona due process. Once again, there was no evidence of bad faith. The police delivered the swab to a hospital for analysis. Hospital personnel failed to air dry the swab and, as a result, tests were not conclusive. Re-

lying upon *Arizona v. Youngblood,* 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988), the court of appeals reversed the trial court's order of dismissal and ordered that the charges against the defendant be reinstated. *State v. Herrera–Rodriguez,* 164 Ariz. 49, 790 P.2d 747 (App.1989). We granted the defendant's petition for review.

### II. DISCUSSION
#### A. *Preclusion*

Herrera–Rodriguez raised his state due process claim in the trial court. In contrast, Youngblood did not assert his state due process claim until he had been through the trial court, the court of appeals, this court, and the United States Supreme Court. He first raised his state due process claim on remand to the court of appeals. The court of appeals should have rejected his claim as untimely. One bite at the apple is enough. One should not be allowed to hold back a claim or issue and then use it only if one needs it. All claims or issues arising out of the same nucleus of operative facts must be presented at the same time, or else they are precluded. At some point litigation must come to an end. Lack of finality is one of the reasons for the popular dissatisfaction with our legal system. Piecemeal litigation is an evil to be avoided.[1]

■ Even on direct appeal, we generally refuse to consider claims that are not raised below. "Absent a finding of fundamental error, failure to raise an issue at trial ... waives the right to raise the issue on appeal." *State v. Gendron,* 168 Ariz. 153, 154, 812 P.2d 626, 627 (1991).[2] With even greater force, preclusion should occur on remand after direct appellate review has

---

1. The dissent characterizes defendant's failure to expressly raise the state claim as understandable, *post,* at 509, 844 P.2d at 1159. However, as the dissent acknowledges, state and federal claims have different sources. *Post,* at 508, 844 P.2d at 1158. There is federal judicial review of federal claims, but not state claims. Lawyers know the difference. Justice William Brennan has been urging lawyers to raise state claims for many years. *See* William J. Brennan, Jr., *State Constitutions and the Protection of Individual Rights,* 90 Harv.L.Rev. 489 (1977). Our own dissenting Chief Justice has done the same. *See* Stanley G. Feldman & David L. Abney, *The*

*Double Security of Federalism: Protecting Individual Liberty Under the Arizona Constitution,* 20 Ariz.St.L.J. 115, 146 (1988). The Chief Justice has also acknowledged that this court will consider the Arizona Constitution *"at least when lawyers have made an adequate record and raised the proper arguments." Id.*

2. The dissent says we have failed to explain why the principle of fundamental error does not apply to this case. *Post,* at 510, 844 P.2d at 1160. The dissent's concern anticipates its conclusion, not the court's, regarding the merits. The court first determines whether there is er-

been exhausted. *Paramount Pictures, Inc. v. Holmes,* 58 Ariz. 1, 4, 117 P.2d 90, 91 (1942) ("appeals from a judgment may not be taken piecemeal, and ... any question which could and should have been raised on the first appeal may not be presented to nor considered by this court on the second appeal."); *State v. Rhodes,* 112 Ariz. 500, 506–507, 543 P.2d 1129, 1135–36 (1975). As we stated in *Hawkins v. Allstate Ins. Co.,* 152 Ariz. 490, 503, 733 P.2d 1073, 1086, *cert. denied,* 484 U.S. 874, 108 S.Ct. 212, 98 L.Ed.2d 177 (1987), the "[e]fficient and orderly administration [of justice] requires some point in time at which it is too late to raise new issues on appeal." Thus, if we were free to do so, we would hold that Youngblood is precluded from

ror, and then whether it is fundamental. *State v. King,* 158 Ariz. 419, 424, 763 P.2d 239, 244 (1988). Since there is no error, there is no occasion to reach the doctrine of fundamental error.

3. The dissent characterizes the defendant's failure to raise the state constitutional claim as the omission of a "citation." *Post,* at 510, 844 P.2d at 1160. It is difficult to square this characterization with the dissent's acknowledgment that it is "this court's ultimate responsibility to interpret the meaning and application of the Arizona Constitution in light of our own reading of each clause." *Post,* at 508, 844 P.2d at 1158. How can a court fulfill this duty if the issue is not thought to be weighty enough to raise, or if the only difference is a simple citation? The defendant not only failed to "cite" the Arizona Constitution but also failed to mount any sort of argument based on it. *See Taylor v. Sherrill,* 169 Ariz. 335, 338, 819 P.2d 921, 924 (1991) ("while the Arizona Constitution also contains a double jeopardy clause, Ariz. Const. art. 2, § 10, we do not separately discuss it because defendant relied solely on the federal constitution in his arguments to the trial court and the court of appeals"). *State v. Nunez,* 167 Ariz. 272, 274 n. 2, 806 P.2d 861, 863 n. 2 (1991) ("The defendant makes no separate argument based on the state constitutional provision; therefore, we do not separately discuss it.").

4. In its discussion of what issues were properly before it, the Court in *Yee* distinguished between a *claim,* which generally will not be considered for the first time on appeal, and an *argument* in support of a claim, which the Court will consider, even if not made below, so long as properly presented in the petition for writ of certiorari. —— U.S. at ——, 112 S.Ct. at 1532. In contrast, in *Riggins v. Nevada,* Justice Thomas argued that the Court should not have considered petitioner's "liberty interest" argument in

relying upon the Arizona due process clause for having failed to raise that claim at his trial, on direct appeal to the Arizona Court of Appeals, and on review by certiorari by the United States Supreme Court.[3] *See generally Yee v. Escondido,* —— U.S. ——, ——, 112 S.Ct. 1522, 1531, 118 L.Ed.2d 153 (1992).[4] But we are not so free. Although the state petitioned us to review the preclusion issue, the court, as then constituted, denied it. A majority of this court declines to reach an issue upon which review has been denied.[5] We turn next to the merits.

### B. The Merits

In *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215

support of his claim that his rights under the Sixth and Fourteenth Amendments were violated by forced administration of anti-psychotic drugs during his trial, because that argument was not made below. —— U.S. ——, ——, 112 S.Ct. 1810, 1824, 118 L.Ed.2d 479 (1992) (Thomas, J., concurring). Despite the dissent's characterization of our position in the instant case as even more extreme than that taken by Justice Thomas, in fact our analysis is more in line with *Yee.* In the instant case, Youngblood failed to timely raise his state due process claim, a claim (not a mere argument) wholly distinct from his federal due process claim.

5. Although the court limited its grant of review to Youngblood's due process claim, I am of the view that it is not thereby prevented from considering the state's preclusion argument. Such limitations are used to focus the parties' attention on those issues which the court initially believes will be dispositive of the case and are not jurisdictional in nature. *See, e.g., Olmstead v. United States,* 277 U.S. 438, 466, 488, 48 S.Ct. 564, 568, 576, 72 L.Ed. 944 (1928); *Stevens v. Marks,* 383 U.S. 234, 246–247, 86 S.Ct. 788, 795, 15 L.Ed.2d 724 (1966) (Harlan, J., concurring in part and dissenting in part).

This court sometimes grants review and then dismisses a case where review is improvidently granted. Sometimes this court denies review of a certain issue and it turns out that that issue is either outcome dispositive or critical to an issue upon which review is granted. This is such a case. There is no prejudice to the parties. Both the state and the defendant briefed the preclusion issue. I believe it is unwise to fail to address an issue upon which this court improvidently denied review. There is no authority for the proposition that we are precluded from considering a subsidiary issue in a case under these circumstances. Nevertheless, four members of the court think otherwise.

(1963), the Supreme Court held "that the suppression by the prosecution of [material] evidence favorable to an accused upon request violates [federal] due process ... irrespective of the good faith or bad faith of the prosecution." This makes sense. Exculpatory evidence matters whether the police exercise good faith or bad faith in failing to produce it. The defendant is harmed in fact. The defendant is prejudiced by definition because the unproduced evidence is plainly exculpatory. His trial is flawed. He gets a new trial at which the evidence is available, not a dismissal.

In stark contrast to *Brady*, the unpreserved evidence in these cases is neither plainly exculpatory nor inculpatory. By definition, not having been preserved, we will never know. Under these circumstances, one can only say that the evidence *might* have been exculpatory, or the evidence *might* have been inculpatory. More accurately, one could only say that the unpreserved evidence could have been subjected to tests, the results of which *might* have been exculpatory or inculpatory. Thus, there is no showing of prejudice in fact. In contrast to the dissent's statement that this case is about prejudice, all that can be said is that the defendant *might* have been prejudiced. Speculation is not the stuff out of which constitutional error is made.

In *Arizona v. Youngblood* the United States Supreme Court held that for this class of evidence, the good or bad faith of the state is relevant because of an inference that can be drawn from the bad faith of the police. A conscious, intentional or malicious failure to preserve evidence which could be tested suggests "that the evidence could form a basis for exonerating the defendant." 488 U.S. at 58, 109 S.Ct. at 337. Good faith or bad faith does not matter in a *Brady* setting because by definition *Brady* materials are plainly exculpatory and no inference is required.

The defendants argue that in contrast to federal due process, Arizona due process requires us to equate nonexistent evidence which *might* have been exculpatory with existing evidence which is plainly exculpatory. It goes without saying that just as the United States Supreme Court is the final arbiter of federal constitutional issues, this court is the final arbiter of Arizona constitutional issues.

The defendants' argument builds upon this court's peculiar driving under the influence jurisprudence. In *Montano v. Superior Court*, 149 Ariz. 385, 719 P.2d 271 (1986), this court, by the slimmest of margins, held that Arizona due process requires the police to inform a DUI suspect of his right to an independent alcohol test even if the police choose not to test the suspect. *Montano* argued that "the unique evidentiary circumstances attendant to DUI arrests justify a narrow exception" to the rule that "the state normally has no obligation to aid a suspect in gathering potentially exculpatory evidence." *Id.* at 389, 719 P.2d at 275.[6] Driving under the influence cases are arguably unique for a variety of reasons. The evidence is in the defendant's own body. Usually the defendant is in custody and the state has the right to take a breath or blood sample. Whatever our DUI jurisprudence means, the differences are too great to transpose its peculiar rules to any other setting. Efforts in the court of appeals to extend this "narrow exception" are expressly rejected.

More to the point is *State v. Willits*, 96 Ariz. 184, 393 P.2d 274 (1964). For over a quarter century, this case has required trial judges to instruct juries that if they find that the state has lost, destroyed or failed to preserve material evidence that *might* aid the defendant and they find the explanation for the loss inadequate, they may draw an inference that that evidence would have been unfavorable to the state. With respect to evidence which *might* be exculpatory, and where there is no bad faith conduct, the *Willits* rule more than ade-

---

**6.** It is hard to square the dissent's understanding of *Montano* as the rule rather than the DUI exception, *post*, at 512 n. 18, 844 P.2d at 1162 n. 18, with *Montano's* characterization of DUI as a "narrow exception" to the rule that the state has no obligation to gather potentially exculpatory evidence.

quately complies with the fundamental fairness component of Arizona due process. Admittedly, our *Willits* jurisprudence has sometimes defied neat analysis. *Compare State v. Hannah,* 120 Ariz. 1, 2, 583 P.2d 888, 889 (1978) (negligent loss of potentially exculpatory evidence prejudicial even *with Willits* instruction) *with State v. Hunter,* 136 Ariz. 45, 50–51, 664 P.2d 195, 200–201 (1983) (negligent loss of potentially exculpatory evidence prejudicial *without Willits* instruction), *and State v. Perez,* 141 Ariz. 459, 464, 687 P.2d 1214, 1219 (1984) (failure to obtain possession of material evidence plus actual prejudice requires *Willits* instruction). But the core of the doctrine as it relates to Arizona due process is that an instruction is adequate where the state destroys, loses or fails to preserve evidence unless the state acts in bad faith or the defendant suffers prejudice-in-fact. *See State v. Serna,* 163 Ariz. 260, 264, 787 P.2d 1056, 1060 (1990) (first considering federal due process under *Arizona v. Youngblood,* and then *Willits*); *State v. Tucker,* 157 Ariz. 433, 442, 759 P.2d 579, 588 (1988) (applying bad faith standard *before* Supreme Court decided *Arizona v. Youngblood*).

Contrary to the dissent's characterization of the role of bad faith as new, *post,* at 513, 844 P.2d at 1163, we adopted the bad faith guide long before the United States Supreme Court did. Well before the Supreme Court decided *Youngblood* we said, "[a] defendant is not deprived of due process by the destruction of evidence unless the state has acted in bad faith or the defendant is prejudiced by the loss." *State v. Day,* 148 Ariz. 490, 496, 715 P.2d 743, 749 (1986). To the same effect is *State v. Soloman,* 125 Ariz. 18, 22–23, 607 P.2d 1, 5–6 (1980). Where the nature of the evidence—exculpatory, inculpatory, or neutral—is unknown, as in these cases, there can be no showing of prejudice in fact. Thus, only a showing of bad faith implicates due process. The bad faith guide to the fundamental fairness component of Arizona due process in the context of unpreserved potentially exculpatory evidence is therefore hardly new and certainly no departure from our previous holdings. Indeed, if bad faith were read out of due process analysis in the context of unpreserved potentially exculpatory evidence, when would *Willits* ever be appropriate?

The defendants and the dissent would have us abandon our own pre-existing state constitutional law under the guise of not following the United States Supreme Court. In truth, the Supreme Court has followed us in this area, and with good reason. The question is fundamental fairness. When the state exhibits bad faith in the handling of critical evidence, it is fundamentally unfair to allow the trial to proceed. The court's remedy is to tell the state it will not be allowed to prosecute the case in our courts. Bad faith strengthens the inference that the evidence might be exculpatory to an unacceptable level.

In contrast, where there is no bad faith it is fundamentally unfair to bar the state from our courts. The inference that the evidence may be exculpatory is not strong enough to dismiss the case. It is enough to let the jury decide whether to draw such an inference.

The defendants asked for and received a *Willits* instruction at their trials. There was no evidence of bad faith here. The facts in these cases are indistinguishable from those in *Willits.* There, the police gave dynamite and wires to the Air Force which in turn destroyed them. Willits argued that the dynamite and wire *"might have aided [him] in showing that [an] explosion was accidental."* 96 Ariz. at 188, 393 P.2d at 278. We held that Willits was entitled to an instruction, not a dismissal.

When a *Brady* violation results only in a new trial, it would be bizarre to suggest that, because of a non-malignant fortuity, fundamental fairness would require the dismissal of the charges. The *possibility* of prejudice is not sufficient to justify the ultimate sanction—an order of dismissal. *See United States v. Loud Hawk,* 474 U.S. 302, 315, 106 S.Ct. 648, 656, 88 L.Ed.2d 640 (1986). Instead, the defendant gets more than the process due with a *Willits* instruction. "The touchstone of due process under both the Arizona and federal constitutions is fundamental fairness." *State v.*

*Melendez,* 172 Ariz. 68, 71, 834 P.2d 154, 157 (1992).

We therefore hold that absent bad faith on the part of the state, the failure to preserve evidentiary material which could have been subjected to tests, the results of which might have exonerated the defendant, does not constitute a denial of due process of law under the Arizona Constitution.

Here, there is no evidence to suggest bad faith on the part of the police. Nor has there been any showing of prejudice in fact. Thus, the defendants were not denied due process of law under the Arizona Constitution.[7]

### III. DISPOSITION

The judgment of the court of appeals in *Youngblood* is reversed, its opinion is vacated, and the convictions and sentences imposed by the trial court are affirmed. The judgment of the court of appeals in *Herrera–Rodriguez* is affirmed, its opinion is vacated, the order of the trial court dismissing the charges is reversed, and the case is remanded for trial.

MOELLER, V.C.J., and CORCORAN, J., concur.

FELDMAN, Chief Justice, concurring in part and dissenting in part.

Drawing on its interpretation of Arizona precedent and accepting the reasoning of federal case law where compelling, the court today holds that fundamental fairness requires no more than a *Willits* instruction.[1] *See State v. Willits,* 96 Ariz. 184, 393 P.2d 274 (1964). Ultimately, the court applies the due process clause of the Arizona Constitution in the same manner as its federal counterpart. *See Arizona v. Youngblood,* 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988). The majority does not, however, agree with the state's position that the two clauses are coterminous. Instead, it reaffirms this court's ultimate responsibility to interpret the meaning and application of the Arizona Constitution in light of our own reading of each clause.

Because I believe that this approach to state constitutional decision-making is correct, I concur in the constitutional *process* adopted by the majority and join in that portion of the opinion. Disagreeing with the lead opinion's [2] application of that process to Youngblood and with the conclusion the majority reached in both cases, I respectfully dissent from the following portions of the opinion.

### A. Preclusion: *State v. Youngblood*

Stating that Youngblood failed to assert his due process claim under the Arizona Constitution until he had been through the entire appellate system and his case remanded to our court of appeals, the lead opinion argues that "Youngblood is precluded from relying upon the Arizona due process clause." [3] Both the premise and conclusion are flawed.

#### 1. *The Lead Opinion's Position*

The lead opinion's discussion of the preclusion issue is both dictum—language unnecessary to the holding—and irrelevant to the issue before the court. Concluding that we are "not ... free" to decide the

---

7. The dissent's reference to the "presumption of innocence" and "cases in which the other evidence is inconclusive" baffles us. *Post* at 511 and 514, 844 P.2d at 1161 and 1164. If there is no substantial evidence to warrant a conviction beyond a reasonable doubt without the absent evidence, the defendant is entitled to a judgment of acquittal. Rule 20, Ariz.R.Crim.P. If there is such substantial evidence, no harm is done.

1. Lead op. at 505–506, 844 P.2d at 1155–1156.

2. A majority of this court (Vice Chief Justice Moeller, Justice Corcoran, and Justice Martone)

holds that due process is not violated unless a defendant can demonstrate that the loss of evidence has resulted from the state's bad faith. Also, a majority (Chief Justice Feldman, Vice Chief Justice Moeller, Justice Corcoran, and Justice Zlaket) believes that Youngblood should *not* be precluded from asserting his Arizona due process rights in this court. Therefore, I refer to Justice Martone's opinion as the "lead opinion."

3. Lead op. at 505, 844 P.2d at 1155.

case on the issue of preclusion[4]—having neither granted review, ordered briefing, nor entertained argument of that issue— the lead opinion "turn[s] next to the merits"[5] and decides them. What, then, is the preceding discussion entitled *"Preclusion"*? It is no more than the author's dissertation on the question of preclusion, uninformed by briefing[6] or argument.

At the risk of compounding the error of a process that I believe is procedurally improper, I think it necessary to respond to the lead opinion's dicta with some of my own. The reader wishing to quickly get to the only issue before the court and decided by it is advised to begin at Part B of this dissent.

*2. The Issue was Raised*

Youngblood did raise his due process claim; he also made the proper supporting argument. At every stage of the proceedings, from the trial court to this court, Youngblood has argued that the destruction of evidence violated principles of fundamental fairness, denied him a fair trial, and thus offended due process. Youngblood failed only to cite article 2, section 4 of the Arizona Constitution when arguing the requirement of fundamental fairness. Indeed, Youngblood's original brief in the court of appeals cited neither the state nor federal constitution but spoke generally of due process.

Youngblood was not alone in this omission. The court of appeals' original opinion in *State v. Youngblood*, 153 Ariz. 50, 734 P.2d 592 (Ct.App.1986), also did not specify which due process clause it applied and cited neither constitution, instead referring to both federal and state cases in arriving at its conclusion. This court has been guilty of similar imprecision. *See, e.g., State v. Tucker*, 157 Ariz. 433, 442–43, 759 P.2d 579, 588–89 (1988).[7]

Youngblood's failure to cite the Arizona Constitution did not prejudice the state. Contrary to the lead opinion's assumption, Youngblood did not hold back that issue. In a timely manner and at every step, he raised the due process issue, arguing that the destruction of evidence deprived him of a fair trial. When the United States Supreme Court held for the first time that bad faith was the *sine qua non* of a due process deprivation, Youngblood then asked the state court to follow the Arizona cases, such as *Tucker*, and hold that under the Arizona Constitution bad faith was only one of the tests of a fair trial. It is understandable that he had not done so before. Neither this court nor any other had previously been aware that bad faith was the only factor. In fact, this court previously abjured such subjective inquiries into the prosecutorial psyche in similar cases. *See, e.g., Pool v. Superior Court*, 139 Ariz. 98, 677 P.2d 261 (1984).

The view espoused today, therefore, is far more radical than the inarguable statement that "[o]ne should not be allowed to hold back a claim or issue and then use it only if one needs it."[8] Now, under what is evidently the lead opinion's view, even though a litigant suffers no prejudice, constitutional rights may be destroyed simply because a lawyer had no greater prescience

---

4. Lead op. at 505, 844 P.2d at 1155.

5. Lead op. at 505–506, 844 P.2d at 1155–1156.

6. The lead opinion suggests that the preclusion issued was briefed. *Id.* and n. 5. It is incorrect. Preclusion was raised by the state in one paragraph. Petition for Review at 10–11. Youngblood responded in one paragraph. Opposition to Petition for Review at 2. This court then denied review on the preclusion issue but granted review, ordered supplemental briefing, and heard argument on two other issues. *See* Order dated May 25, 1990. Thus, the preclusion question was not accepted for review, not briefed, and not argued.

7. In discussing Tucker's claim that the loss of evidence had rendered his trial fundamentally unfair, thus depriving him of due process, former Chief Justice Gordon discussed federal and Arizona cases without citing to either constitution; nor did he indicate whether Tucker made his claim under either or both. While judges, particularly those of the highest courts, may sometimes be excused for that which the lead opinion condemns in lawyers, the Chief Justice and the *Tucker* court possibly were under the same misapprehension as defense counsel in this case, correctly believing at the time that the test was the same under both constitutions.

8. Lead op. at 504, 844 P.2d at 1154.

than the court of appeals or this court and failed to state which constitution he invoked in support of a timely claim raised in the exact words used in both constitutions. If such becomes the court's holding, we witness the triumph of inconsequential form over critical substance. I do not—as the lead opinion implies—retreat from the principle that state issues must be raised and a record made. The issue was raised, and the point was argued. All that was omitted was a citation.

### 3. The Issue Could not be Waived

Even if the preclusion principle applied in this case, the lead opinion has overlooked a significant issue. Briefly acknowledging that there is no preclusion when fundamental error has occurred, the lead opinion fails to explain why that principle does not apply to this case. Indeed, if the state's destruction of evidence denied Youngblood a fundamentally fair trial, the issue would not be precluded even if he had completely failed to raise the evidentiary question. *See, e.g., State v. Dawson*, 164 Ariz. 278, 283, 792 P.2d 741, 746 (1990); *State v. Hunter*, 142 Ariz. 88, 90, 688 P.2d 980, 982 (1984); *see also State v. Slemmer*, 170 Ariz. 174, 177–78 & n. 8, 823 P.2d 41, 44–46 & n. 8 (1991). Thus, the reasoning is circuitous; if Youngblood was denied a fair trial, the error would always be fundamental and could not be precluded.[9]

Even if Youngblood had failed to raise the state due process claim, a finding of preclusion would be wrong as a matter of jurisprudential policy. Although it cites *Yee v. Escondido*, — U.S. —, 112 S.Ct. 1522, 118 L.Ed.2d 153 (1992),[10] the lead opinion's views on preclusion are far more extreme. In *Yee*, the Supreme Court held that courts have jurisdiction to consider a claim first raised on appeal. *Yee*, — U.S. at —, 112 S.Ct. at 1531; *see also Dawson*, 164 Ariz. at 283–86, 792 P.2d at 746–

49. Accordingly, even if Youngblood had failed to raise the destruction of evidence claim in the trial court, the court of appeals had jurisdiction to consider that claim. A refusal to do so on direct review would have been prudential—and usually good policy—rather than jurisdictional in nature. As in the present case, when the court of appeals passes on such a claim—as well it might, considering the importance of the constitutional issue—the issue is fairly before this court. *See, e.g., Dawson*, 164 Ariz. at 283–86, 792 P.2d at 746–49; *see also United States v. Williams*, — U.S. —, — — —, 112 S.Ct. 1735, 1738–41, 118 L.Ed.2d 352 (1992).

Thus, the lead opinion, citing *Yee*, evidently concludes that the court of appeals had discretion to consider the issue but that, for lack of a single citation, the court of appeals abused its discretion by deciding the issue. This is a legally incorrect and gratuitous reprimand to the court of appeals. *See Yee*, — U.S. at — — —, 112 S.Ct. at 1531–32; *cf. Riggins v. Nevada*, — U.S. —, —, 112 S.Ct. 1810, 1824, 118 L.Ed.2d 479 (1992) (Thomas, J., dissenting).[11] Youngblood squarely and timely raised the due process claim. Each court, including the court of appeals, considered his argument on the question of fundamental fairness. Even under Justice Thomas' view, the issue was not waived or precluded.

So much for the "merits" of preclusion. I return to the process. Dicta is easy to define but sometimes hard to avoid. All of us are guilty of unnecessary statements. It is part of the common law process. But this goes much further. The preclusion discussion in the lead opinion is entirely dictum, recognized as such in the lead opinion, and completely irrelevant to the issues on which the case was decided. Further, the conclusions are reached without the benefit of briefing or argument by counsel.

---

**9.**  *Cf.* Lead op. at 505 n. 3, 844 P.2d at 1155 n. 3.

**10.**  Lead op. at 505, 844 P.2d at 1155.

**11.**  Concluding that the "Nevada courts had no reason to consider an argument that Riggins did not make," Justice Thomas asserted that the

United States Supreme Court "should refuse to consider Riggins's [liberty interest] argument," especially because it had granted certiorari only to determine other issues. *Id.* No other member of the Court agreed. In fact, Justice Scalia joined the dissent on all issues *except* preclusion. *Riggins*, — U.S. at —, 112 S.Ct. at 1821.

This court denied review of the issue, refused to hear argument on the issue, and therefore should not address it. I express my dissent from so improper a process and turn next to the only issue before us.

## B. Loss of Evidence

Disregarding both the persuasive evidentiary and legal analysis of the court of appeals in *Youngblood*[12] and the trial judge's factual finding that the destroyed evidence "may have exonerated" Herrera–Rodriguez,[13] the majority here adopts a bright line rule that no matter what evidence is lost or how significant its potential exculpatory value, due process is not violated unless the defendant can demonstrate that the loss has resulted from the state's "bad faith."[14] This analysis, too, is significantly flawed.

### 1. Brady v. Maryland *is Inapplicable*

First, the court finds some support in cases such as *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), where the remedy for suppressed evidence is retrial, not dismissal.[15] This is true, but the *Brady* rule is not applicable to this case. When, as in *Brady*, the prosecution has withheld exculpatory evidence, a new trial, at which the evidence can be produced, is the appropriate remedy, "irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 104, 83 S.Ct. at 1197. As the majority says today, *Brady* "makes sense."[16] Its application to this case, however, makes no sense. In this case, the evidence is not available for retrial because it was destroyed before testing. Retrial would leave us with the same issue: determining what remedy to invoke when the evidence has not just been withheld but destroyed.

### 2. *Good Faith Cannot be the Only Test*

The court's holding that no remedy beyond a jury instruction is appropriate unless the defendant establishes the state's bad faith is a non sequitur. The issue is not the state's good or bad faith. Rather, the issue is whether the defendant received what the due process clause of the constitution requires: a fair trial under fundamentally fair procedures. Obviously, in some situations, a defendant might have had a fair trial even though the state acted in bad faith; likewise, a defendant might have had an unfair trial even though the state acted in good faith. The answer is fact-intensive and depends on the quality and quantity of the other evidence, the type of evidence that was lost, its potential value for exculpatory purposes, and similar issues. There is no basis to assume, in every case where the police may have acted in bad faith, that a fair trial has been denied. Nor has due process always been satisfied where the police have acted in good faith but have lost evidence having significant exculpatory value. The majority's bright line test achieves just that result. At 506–507, 844 P.2d at 1156–1157; Matthew H. Lembke, Note, *The Role of Police Culpability in* Leon *and* Youngblood, 76 Va.L.Rev. 1213, 1240 (1990); *The Supreme Court, 1988 Term—Leading Cases*, 103 Harv.L.Rev. 137, 157–67 (1989).

The majority also overlooks the effect of the presumption of innocence. *See State v. Mathers*, 165 Ariz. 64, 66–67, 796 P.2d 866, 868–69 (1990). Presuming the defendant to be innocent, the proper question is whether the lost evidence had such potential exculpatory value that its destruction significantly impaired his defense. One can easily imagine cases—and the trial judge in *Herrera–Rodriguez* evidently believed that

**12.** For a description of the evidence in *Youngblood, see* 153 Ariz. at 50–52, 734 P.2d at 592–94. The opinion applies law (as it existed in Arizona until today) to fact with compelling force, demonstrating, I believe, the error of the view taken by today's majority. *See id.* at 52–55, 734 P.2d at 594–97.

**13.** *See* November 4, 1988 order, *State v. Herrera–Rodriguez*, Maricopa County Superior Court case No. CR–87–11124.

**14.** Lead op. at 508, 844 P.2d at 1158.

**15.** Lead op. at 506, 844 P.2d at 1156.

**16.** Lead op. at 506, 844 P.2d at 1156.

this was one [17]—where a "defendant is unable to prove the state acted in bad faith but ... the loss or destruction of evidence is nevertheless so critical to the defense as to make a criminal trial fundamentally unfair." *Massachusetts v. Henderson*, 411 Mass. 309, 582 N.E.2d 496, 497 (1991) (quoting *Arizona v. Youngblood*, 488 U.S. at 61, 109 S.Ct. at 339 (Stevens, J., concurring) (citations omitted)).

If the lost evidence significantly impaired his defense, Herrera–Rodriguez' due process rights were prejudiced. Prejudice has always been an independent component of Arizona's due process clause in cases involving destroying or failing to preserve significant evidence. *See, e.g., Tucker*, 157 Ariz. at 442, 759 P.2d at 588. This has been the holding in driving under the influence ("DUI") cases such as *Montano v. Superior Court*, 149 Ariz. 385, 719 P.2d 271 (1986). *Montano*, of course, is *not* a failure to preserve evidence case, but our other DUI cases are.[18] Prejudice has also been the test in such cases as *Tucker* and *State v. Gerhardt*, 161 Ariz. 410, 778 P.2d 1306 (Ct.App.1989), that have no relation to the peculiarities of DUI law. Neither the trial judge in *Herrera–Rodriguez* nor the court of appeals in *Youngblood* fashioned a new Arizona rule to be applied in destruction of evidence cases. They simply applied existing Arizona law. *See Youngblood*, 153 Ariz. at 52–55, 734 P.2d at 594–97. Since 1978, the Arizona Supreme Court has a well-settled history in cases of lost or destroyed evidence. The origin appears to be *State ex rel. Hyder v. Hughes*, 119 Ariz. 261, 264, 580 P.2d 722, 725 (1978) (a rape case adopting the test in *United States v. Heiden and Klein*, 508 F.2d 898, 902 (9th Cir.1974)). In *Hughes*, we quoted *Heiden and Klein:* "When there is loss or destruction of such evidence, we will reverse a defendant's conviction if he can show (1) bad faith or connivance on the part of the government *or* (2) *that he was prejudiced* by the loss of the evidence." *Hughes*, 119 Ariz. at 264, 580 P.2d at 725 (emphasis added). Thus, the majority ignores our non-DUI cases, in which we have consistently held, before *Arizona v. Youngblood*, that the test for fundamental error and due process is either bad faith OR prejudice.[19]

17. In a comprehensive minute entry filed on November 4, 1988, an able, experienced trial judge detailed the evidence, explained that it was less than overwhelming, and noted that the jury, which hung, must have reached the same conclusion. He then dismissed the case.

18. *See, e.g., State v. Kemp*, 168 Ariz. 334, 813 P.2d 315 (1991) (reaffirming that police must preserve a separate breath sample for independent testing by a DUI defendant); *State v. Velasco*, 165 Ariz. 480, 799 P.2d 821 (1990); *Oshrin v. Coulter*, 142 Ariz. 109, 688 P.2d 1001 (1984) (holding that the Arizona Supreme Court will reverse a conviction if bad faith *or* prejudice can be shown).

Until today, our court's cases have always accepted the proposition that due process requires that even in situations "where the defendant cannot show bad faith in [the state's failure] to preserve material evidence, the defendant may nevertheless be entitled to a dismissal if he made a sufficient showing of substantial prejudice." *State v. Gerhardt*, 161 Ariz. 410, 412, 778 P.2d 1306, 1308 (Ct.App.1989). The majority overrules our jurisprudence on this issue simply by dismissing these cases as DUI cases. Lead op. at 505–506, 844 P.2d at 1155–1156. This assumes, I suppose, that we have different due process tests depending on whether the case involves drunk driving, burglary, or homicide. The constitution makes no such distinctions but, instead, requires due process in all cases.

19. Many subsequent decisions by this court have endorsed the *Hughes* rule. They include, in chronological order: *State v. Hannah*, 120 Ariz. 1, 2, 583 P.2d 888, 889 (1978) (holding that a defendant charged with arson and filing fraudulent insurance claim was prejudiced by the loss of the evidence); *State v. Soloman*, 125 Ariz. 18, 22, 607 P.2d 1, 5 (1980) (holding that the defendant charged with rape while armed with a knife was not deprived of his due process rights); *State v. Schilleman*, 125 Ariz. 294, 299, 609 P.2d 564, 569 (1980) (holding that defendant charged with first degree rape and burglary not deprived of due process rights); *State v. Wiley*, 144 Ariz. 525, 538, 698 P.2d 1244, 1257 (1985) (holding that defendant charged with burglary, kidnapping, and robbery not deprived of due process rights); *State v. Day*, 148 Ariz. 490, 496–97, 715 P.2d 743, 749–50 (1986) (holding that defendant charged with various sexual assaults not deprived of due process rights); *Tucker*, 157 Ariz. at 442–43, 759 P.2d at 588–89 (defendant charged with first degree murder); *State v. Serna*, 163 Ariz. 260, 264, 787 P.2d 1056, 1060 (1990) (holding that defendant charged with first degree murder not deprived of due process rights).

Remarkably, today's majority argues that *State v. Serna*, 163 Ariz. 260, 787 P.2d 1056 (1990), and *Tucker*, 157 Ariz. 433, 759 P.2d 579, adopted a "bad faith guide long before the United States Supreme Court did."[20] If this means that bad faith was the only factor we considered, the assertion is unsupported, at best. As the majority acknowledges, these cases, like those cited in footnote 19, all held that due process was violated if the "state has acted in bad faith *OR* the defendant is prejudiced by the loss."[21]

Prejudice is what the present case is about. The suggestion that today's decision, making bad faith the only test for a due process violation, is a mere exercise in *stare decisis* is unfounded.[22] Before today, bad faith was one of two elements used in the *alternative* to determine fundamental fairness. After today, it is the only test. Yet the majority claims "no departure from our previous holdings."[23] Until today, no Arizona case had held that bad faith is the *sine qua non* of due process. Today's holding results from the majority's ignoring well-reasoned Arizona authority and applying the views of four members of the United States Supreme Court. That the majority chooses to follow the views of a plurality of the United States Supreme Court is unremarkable, though I believe on this issue it is erroneous. The court's refusal to acknowledge what it is doing, however, is remarkable.

We should not ignore well-reasoned Arizona authority just because four United States Supreme Court justices change their interpretation of what federal due process requires. Five years from now, the plurality may change. What then for Arizona?

### 3. *The Majority's Holding is Unsupported by Authority*

These considerations have prompted other state courts to reject the view of today's majority and that of the United States Su-

preme Court's plurality in *Arizona v. Youngblood.* *See, e.g., Thorne v. Department of Pub. Safety*, 774 P.2d 1326, 1330 n. 9 (Alaska 1989) ("We have construed the Alaska Constitution's due process clause to not require a showing of bad faith."); *Lolly v. Delaware*, 611 A.2d 956 (Del.1992) (rejecting bad faith as a grounds for *Willits*-type instruction); *Hammond v. Delaware*, 569 A.2d 81, 86–87 (Del.1989) ("We remain convinced that fundamental fairness, as an element of due process, requires the State's failure to preserve evidence that could be favorable to the defendant '[to] be evaluated in the context of the entire record.' ") (quoting *United States v. Agurs*, 427 U.S. 97, 112, 96 S.Ct. 2392, 2402, 49 L.Ed.2d 342 (1976)); *Hawaii v. Matafeo*, 71 Haw. 183, 787 P.2d 671, 673 (1990) ("In certain circumstances, regardless of good or bad faith, the State may lose or destroy material evidence which is 'so critical to the defense as to make a criminal trial fundamentally unfair' without it.") (quoting *Arizona v. Youngblood*, 488 U.S. at 61, 109 S.Ct. at 339 (Stevens, J., concurring)); *Idaho v. Fain*, 116 Idaho 82, 774 P.2d 252, 265–67, *cert. denied*, 493 U.S. 917, 110 S.Ct. 277, 107 L.Ed.2d 258 (1989); *Henderson*, 582 N.E.2d at 497 ("The rule under the due process provisions of the Massachusetts Constitution is stricter than that stated in the *Youngblood* opinion. . . . The fact that the police did not act in bad faith when they negligently lost the potentially exculpatory evidence cannot in fairness be dispositive of the issue."); *New Hampshire v. Smagula*, 133 N.H. 600, 578 A.2d 1215, 1217 (1990) (applying a different test under the state constitution); *New York v. Ramos*, 147 A.D.2d 718, 538 N.Y.S.2d 327, 328 (1989).

The error in the majority's logic becomes apparent when one considers its espousal of the *Willits* instruction.[24] *See generally Willits*, 96 Ariz. at 186–91, 393 P.2d at 275–79. The majority concludes that an instruc-

---

20. Lead op. at 507, 844 P.2d at 1157.

21. Lead op. at 507, 844 P.2d at 1157 (quoting *State v. Day*, 148 Ariz. 490, 496, 715 P.2d 743, 749 (1986) (emphasis added)).

22. Lead op. at 507, 844 P.2d at 1157.

23. Lead op. at 507, 844 P.2d at 1157.

24. Lead op. at 505–506, 844 P.2d at 1155–1156.

tion permitting the jury to infer that the evidence would have been exculpatory cures the problem, no matter how significant the lost evidence. This, of course, is an assumption for which no empirical evidence exists. In fact, considerable evidence suggests the contrary. *See generally* Joseph M. Livermore, *Absent Evidence,* 26 Ariz.L.Rev. 27 (1984); J. Alexander Tanford, *The Law and Psychology of Jury Instructions,* 69 Neb.L.Rev. 71 (1990). In any event, the majority fails to explain why it is permissible for the jury to infer that the evidence might have been exculpatory but impermissible for the trial judge to do so as a matter of law under appropriate facts.

#### 4. *The Majority's Holding is Bad Judicial Policy*

Finally, in making the officers' bad faith the litmus test to determine whether a defendant received what due process requires, the majority requires our trial courts to do exactly what they should not do. Instead of deciding the objective question of whether the loss of the evidence deprived a defendant of a fair trial, trial courts will, henceforth, concentrate on the subjective intent of the officers. No benefit and much mischief will result from these mini-trials on the motives of the police and prosecutors. *See Pool,* 139 Ariz. at 105–07, 677 P.2d at 268–70; *Lolly,* 611 A.2d at 960.

The majority's new rule has other significant policy ramifications. Regardless of whether important evidence is exculpatory or inculpatory, good public policy requires that the police use care in preserving it. Instead of requiring a defendant to prove something as nebulous and subjective as a police officer's bad faith, we should encourage due care. Today's holding invites bad police work, so long as the government does not act in bad faith, whatever that is. Is it bad faith when the police collect valuable evidence, know that it should be preserved, but carelessly fail to do so? Is it bad faith when the government fails to provide the law enforcement agency with the proper equipment to preserve the evidence? Properly, the majority does not

define bad faith at this time; no doubt, we must await a procession of cases over the coming years to define this amorphous term.

The new bad faith jurisprudence created by the present case is possible, again, only because the majority ignores the presumption of innocence. The basis of our previous cases was that because a defendant is presumed innocent, we must at least indulge the idea that evidence that could have significant exculpatory value would have rebutted guilt. Therefore, in cases in which the other evidence is inconclusive, the loss may well have prejudiced the defendant and deprived him of a fair trial, thus requiring dismissal.

I would rest on our previous cases and, in applying our constitution, follow the holdings of other state courts. I agree with the Massachusetts Supreme Court that when the government loses potentially exculpatory evidence, the trial court must

> balance the degree of culpability of the government, the materiality of the evidence, and the potential prejudice to the defendant in order to protect the defendant's constitutional due process right to a fair trial.... If the loss of the evidence threatened the defendant's right to a fair trial, the judge has discretion concerning the manner in which to protect the defendant's rights.

*Henderson,* 582 N.E.2d at 496–97.

### CONCLUSION

Thus, in *Youngblood,* believing that the issue of due process is not precluded, I would approve the court of appeals' opinion and reverse the judgment of conviction. In *Herrera–Rodriguez,* I would vacate the court of appeals' opinion and affirm the trial court's order of dismissal.

ZLAKET, J., concurs.

