NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellant*,

*v.*

JOSHUA RUIC KIMBALL, *Appellee*.

No. 1 CA-CR 23-0317
FILED 06-27-2024

Appeal from the Superior Court in Coconino County
No. S0300CR202200544
The Honorable Joshua Steinlage, Judge

**VACATED AND REMANDED**

COUNSEL

Coconino County Attorney's Office, Flagstaff
By Sasha Charls
*Counsel for Appellant*

Law Office of David G. Bednar, Flagstaff
By David G. Bednar
*Counsel for Appellee*

---

**MEMORANDUM DECISION**

Judge Michael J. Brown delivered the decision of the Court, in which Presiding Judge Samuel A. Thumma and Judge Jennifer B. Campbell joined.

---

**B R O W N**, Judge:

¶1        The State appeals the superior court's order dismissing with prejudice criminal charges filed against defendant Joshua Ruic Kimball. The State argues the court abused its discretion by finding that a 911 call recording was destroyed in bad faith and that the destruction prejudiced Kimball.  Because we agree with the State's argument, we vacate the order dismissing the case and remand for further proceedings.

**BACKGROUND**

¶2        On August 21, 2021, police dispatch informed Seargent Lampsa that a man was reportedly driving a black Chevrolet truck on I-40, using rude hand gestures, brake checking, and attempting to ram the alleged victims' vehicle.  The victims also told the dispatcher that the man had brandished a black handgun at them and continued driving. Eventually Lampsa stopped the truck, driven by Kimball.  Kimball, however, was not immediately arrested and no charges were filed at that time.  On September 1, Kimball's attorney made an online request to the Arizona Department of Public Safety ("DPS") to provide by U.S. mail the offense report, the 911 dispatch audio files, and any video files.

¶3        In January 2022, the State charged Kimball with two counts of aggravated assault with a deadly weapon, one count of misconduct involving weapons, and one count of disorderly conduct with a weapon. He pled not guilty to all charges.  A worksheet from a pretrial conference held on March 8, 2022, shows that defense counsel was "REQUESTING MEDIA" from the Coconino County Attorney's Office ("CCAO").  On July 21, DPS responded to the September 1 online request—more than 10-months-old at the time—by emailing defense counsel a link labeled "Dispatch – 911."  The email warned that the link would "expire in 30 days."  According to defense counsel, the link was defective, but he did not specify when he tried to open it.

**¶4** On November 7, 2022, defense counsel emailed the CCAO, noting that he had yet to receive the 911 recording and requesting that it be sent to him. A few weeks later, the CCAO informed defense counsel that the recording "no longer exists." Apparently it had been deleted a few months earlier, on August 22, 2022, pursuant to DPS's one-year retention policy for audio files.

**¶5** Kimball filed a motion to dismiss the charges with prejudice, asserting the State violated his due process rights by failing to preserve the 911 recording. After an evidentiary hearing, where Lampsa and a DPS representative testified, the superior court granted Kimball's motion. The court found that the loss of the 911 recording prejudiced Kimball by diminishing his ability to cross-examine or impeach the victims with prior inconsistent statements. It determined that the State acted in bad faith because DPS took more than 300 days to respond to Kimball's request and did not honor his requested form of response—U.S. mail. The court further reasoned that after receiving the request in March 2022, the CCAO made no "efforts whatsoever" to preserve the 911 recording, which was "not just mere negligence," it was "bad faith." The State timely appealed, and we have jurisdiction under A.R.S. §§ 12–120.21(A)(1) and 13–4031.

**DISCUSSION**

**¶6** The State argues the superior court abused its discretion by dismissing the case with prejudice because Kimball did not suffer actual prejudice, and the State did not act in bad faith. The State contends the appropriate remedy for the loss of the 911 recording is a *Willits* instruction, which permits a jury to infer the lost evidence would have proved facts against the State's interest. *See State v. Murray*, 184 Ariz. 9, 33 (1995) (citing *State v. Willits*, 96 Ariz. 184 (1964)). Kimball counters that the court acted within its discretion to dismiss the case with prejudice. He argues he suffered actual prejudice because, without the 911 recording, he could not analyze the legality of the traffic stop or effectively cross-examine the victims. He also contends the State's inaction in response to his two written requests for the 911 recording "went far beyond negligence, and [] equates to bad faith."

**¶7** "We review orders dismissing criminal charges for an abuse of discretion or application of an incorrect legal interpretation." *State v. Penney*, 229 Ariz. 32, 34, ¶ 8 (App. 2012). Trial judges have broad discretion in choosing sanctions for violations of discovery rules, which we will not reverse absent an abuse of discretion. *See State v. Armstrong*, 208 Ariz. 345, 353–54, ¶ 40 (2004). "We view the facts and evidence in the light most

favorable to sustaining the trial court's ruling, but we review questions of law de novo." *State v. Chavez*, 208 Ariz. 606, 607, ¶ 2 (App. 2004). A case may be dismissed with prejudice due to the loss of material evidence if the State acted in bad faith or the defendant suffered actual prejudice. *See State v. Youngblood*, 173 Ariz. 502, 507 (1993) (noting that a *Willits* instruction is inadequate when "the [S]tate acts in bad faith or the defendant suffers prejudice-in-fact").

### A.    Prejudice

**¶8**         In deciding whether the State's failure to preserve evidence violates due process, the "critical distinction . . . is 'between material exculpatory evidence and potentially useful evidence.'" *State v. Speer*, 221 Ariz. 449, 457, ¶ 37 (2009) (quotation omitted). Evidence is constitutionally material when it possesses "an exculpatory value that was apparent before [it] was destroyed, and [is] of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *State v. Dunlap*, 187 Ariz. 441, 452 (App. 1996) (quotation omitted).

**¶9**         On the other hand, when evidence is merely potentially useful in that "the nature of the evidence—exculpatory, inculpatory, or neutral—is unknown, . . . there can be no showing of prejudice in fact." *Youngblood*, 173 Ariz. at 507. In that circumstance, "only a showing of bad faith implicates due process." *Id.* "Absent bad faith, 'the inference that the evidence may be exculpatory is not strong enough to dismiss the case. It is enough to let the jury decide whether to draw such an inference.'" *State v. Lehr*, 227 Ariz. 140, 150, ¶ 41 (2011) (quotation omitted).

**¶10**        The superior court found actual prejudice because the loss of the 911 recording "greatly diminish[ed]" Kimball's ability to challenge the victims' view of what occurred during their alleged interaction with Kimball. We recognize that the victims' statements in the 911 recording may differ from the CAD log and their later statements to law enforcement. Thus, the 911 recording's destruction may hinder Kimball's ability to cross-examine and impeach the victims. However, as the superior court acknowledged, "[we] can't ever know what was actually reported [in] the 911 call." Accordingly, any prejudice arising from the destruction of the recording is speculative and cannot support a finding of actual prejudice. *See Youngblood*, 173 Ariz. at 503–04 (explaining that without bad faith, "failure to preserve *potentially useful evidence* does not constitute a denial of due process of law") (quoting *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988)) (emphasis added).

¶11 Kimball argues nonetheless that he suffered actual prejudice because, without the 911 recording, he cannot determine whether the officers had reasonable suspicion to perform a traffic stop. Kimball points to this court's opinion in *State v. Lopez*, 156 Ariz. 573, 574–75 (App. 1987), where we affirmed the dismissal of charges based on the destruction of police transmission tapes, which would have helped determine if there was reasonable suspicion for the traffic stop. But in *Lopez*, the court did not specify whether it was affirming based on a finding of prejudice or bad faith. *Id.* at 575.

¶12 Further, even if *Lopez* was affirmed based on prejudice, the court relied on a now outdated rule in doing so. *See id.* The *Lopez* court adopted the following rule from a Washington court: "When there is a 'reasonable possibility' that the requested evidence would be favorable and material to the defense, dismissal is a proper sanction for destruction of the evidence." *Id.* (quoting *State v. Boyd*, 629 P.2d 930, 933 (Wash. Ct. App. 1981)). Subsequently, *Youngblood* and its progeny have clarified that dismissal of a case due to lost evidence (in the absence of bad faith) is justified only if the defendant shows there was actual prejudice. *See Youngblood*, 173 Ariz. at 507; *Dunlap*, 187 Ariz. at 452–53; *State v. O'Dell*, 202 Ariz. 453, 458, ¶ 13 (App. 2002) ("The mere possibility that destroyed evidence could have exculpated a defendant is insufficient to establish a due process violation, as there has been no showing of prejudice to the defendant."). Here, because the precise content of the 911 recording is unknown, its use in challenging the traffic stop is speculative, and thus there has been no showing of actual prejudice under the test announced after *Lopez*. *See Youngblood*, 173 Ariz. at 507.

### B.     Bad Faith

¶13 Without actual prejudice, a finding of bad faith is required to dismiss the charges. *Youngblood*, 173 Ariz. at 507. If the State exercises bad faith in handling evidence, it "strengthens the inference that the evidence might be exculpatory to an unacceptable level." *Youngblood*, 173 Ariz. at 506–07 ("A conscious, intentional or malicious failure to preserve evidence which could be tested suggests 'that the evidence could form a basis for exonerating the defendant.'") (quoting *Youngblood*, 488 U.S. at 58). Generally, the determination of bad faith hinges on the State's "knowledge of the exculpatory value of the evidence at the time it was lost or destroyed." *Dunlap*, 187 Ariz. at 452 (quoting *Youngblood*, 488 U.S. at 56, n*); *see also State v. Hulsey*, 243 Ariz. 367, 378–79, ¶ 26 (2018) ("[B]ecause its exculpatory value was not readily apparent, [the defendant] cannot show bad faith on the State's part in not preserving the evidence.").

¶14        The State asserts that neither the CCAO nor DPS knew about the "alleged exculpatory value of the 911 call" when it was destroyed, and thus a finding of bad faith is unwarranted.  Kimball, however, made two written requests for the 911 recording, which the State was obligated to timely fulfill.  Ariz. R. Crim. P. 15.1(e)(1)(B) (requiring the State to provide "911 calls" within "30 days [of] receiving a defendant's written request").  Given the written requests, the State is not absolved of bad faith solely because it lacked knowledge of the 911 recording's potential exculpatory value.[1]  *See Lopez*, 156 Ariz. at 574 ("When the state receives a specific request for such evidence, failure to disclose is seldom, if ever, excusable.").  Therefore, we turn to the State's other arguments explaining why its conduct did not constitute bad faith.

¶15        The State argues it did not act in bad faith because DPS emailed defense counsel a link to the 911 recording before it was destroyed.  Kimball counters that even if the failure to preserve the 911 recording "was only negligent, dismissal is still appropriate because" *State v. Hannah*, 120 Ariz. 1 (1978), "recognized a denial of due process rights when evidence is negligently destroyed."

¶16        In finding bad faith, the superior court noted that the State made "no effort" in response to the written requests for the 911 recording, which was "not just mere negligence," it was "doing nothing whatsoever."  The court reasoned that *Hannah* supports a finding of bad faith under these circumstances "where the destruction occurred negligently before any request to preserve" was made.

¶17        In *Hannah*, the defendant faced arson and insurance fraud charges.  *Id.* at 1.  Shortly before trial he asked to examine certain items that the police had seized.  *Id.*  But the police had already destroyed these items inadvertently and had "made no attempt" to test them for fingerprints.  *Id.* at 1–2.  Our supreme court affirmed the dismissal of charges because the defendant had "been so seriously prejudiced by the loss of evidence that he has been denied due process and that the giving of a *Willits* instruction will not assure him a fair trial."  *Id.* at 2.  It further held that "[b]ecause tests were not made which could have been made, and because it cannot now be determined whether exculpatory evidence would have been developed," the defendant was "denied due process by the negligent destruction of the

---

[1]        The State contends that the CCAO "had no knowledge that 'MEDIA REQUESTED' included a 911-call request" because it was an "overly broad" request.  But the CCAO never attempted to clarify what that "overly broad" request included.  Instead, it took no action.

seized evidence." *Id.* Because the *Hannah* court affirmed the dismissal based on prejudice, not by finding that the State acted in bad faith, it does not support the superior court's conclusion here that the State acted in bad faith. *See id.*

**¶18** Although the *Lopez* court noted that "[w]hen the state receives a specific request for such evidence, failure to disclose is seldom, if ever, excusable," 156 Ariz. at 574, *Youngblood* subsequently defined bad faith as the State's "conscious, intentional or malicious failure to preserve evidence which could be tested." *Youngblood*, 173 Ariz. at 506. Here, DPS, an arm of the State, attempted to preserve the 911 recording by emailing defense counsel a link to retrieve the recording. Although the email was not the format defense counsel had requested and DPS sent it more than 300 days after the request, even assuming that the link was defective, *see Chavez*, 208 Ariz. at 607, ¶ 2, the email still shows that the State attempted to fulfill the request and preserve the 911 recording before it was destroyed. There is no indication the State was aware of issues with the link before the 911 recording was destroyed, and thus no reasonable inference can be drawn that the State's failure to preserve the recording was conscious, intentional, or malicious. *See Youngblood*, 173 Ariz. at 506. The record does not support the court's finding that the State acted in bad faith.

**¶19** In sum, because the precise contents of the 911 recording are unknown, the record only supports a finding that the loss of the 911 recording may have prejudiced Kimball, not that he was actually prejudiced. And given that the State attempted to fulfill Kimball's request for the 911 recording, the record only supports the finding that the State was negligent in allowing the 911 recording's destruction, not that it acted in bad faith for purposes of due process. The superior court abused its discretion by dismissing the charges with prejudice.

**CONCLUSION**

**¶20** We vacate the superior court's order dismissing the case and remand for further proceedings.

