307 P.3d 35

**STATE of Arizona, Appellee,**

v.

**Garland Houston REYES, III, Appellant.**

**No. 1 CA–CR 12–0163.**

Court of Appeals of Arizona,
Division 1, Department B.

July 2, 2013.

Thomas C. Horne, Attorney General by Joseph T. Maziarz, Acting Chief Counsel, Criminal Appeals/Capital Litigation Section and Barbara A. Bailey, Assistant Attorney General, Phoenix, Attorneys for Appellee.

Ballecer & Segal by Natalee E. Segal and Law Office of Neal W. Bassett by Neal W. Bassett, Phoenix, Attorneys for Appellant.

## OPINION

PORTLEY, Judge.

¶ 1 Defendant Garland Reyes, III, appeals his convictions and sentences for possession

of marijuana, including the order requiring him to pay for statutorily-mandated DNA testing. For the reasons that follow, we affirm his convictions and sentences, but vacate the order requiring him to pay the DNA testing fee.

## FACTS AND PROCEDURAL HISTORY

¶ 2 After he was discovered mailing marijuana through the U.S. Postal Service, Reyes was indicted on seven counts of possession of marijuana for sale, as well as money laundering, conspiracy, and illegal control of an enterprise. At the close of the State's case, Reyes successfully moved for a judgment of acquittal on the conspiracy and illegal control of an enterprise charges. The jury subsequently convicted Reyes of six counts of the lesser-included crime of possession of marijuana, acquitted him of one count of possession of marijuana for sale, and was unable to reach a verdict on the money laundering charge. This appeal followed.

## DISCUSSION

### I.

¶ 3 Reyes contends that the court erred by failing to instruct the jury about the dismissal of the conspiracy and illegal control of an enterprise charges before deliberation.[1] Because Reyes failed to object below, we review his claim for fundamental error. *State v. Henderson*, 210 Ariz. 561, 567, ¶ 19, 115 P.3d 601, 607 (2005).

¶ 4 Fundamental error is "error going to the foundation of the case, error that takes from the defendant a right essential to his defense, and error of such magnitude that the defendant could not possibly have received a fair trial." *Id.* "To prevail under this standard of review, a defendant must establish both that fundamental error exists and that the error in his case caused him prejudice." *Id.* at ¶ 20; *see also State v. King*, 110 Ariz. 36, 40, 514 P.2d 1032, 1036 (1973) ("[O]missions in the giving of instructions which were not raised at trial will not

be considered unless the error is so fundamental that it is manifest the defendant did not receive a fair trial."). And, we review jury instructions in their entirety to determine whether the jury was properly guided in arriving at a correct decision. *Pima Cnty. v. Gonzalez*, 193 Ariz. 18, 20, ¶ 7, 969 P.2d 183, 185 (App.1998).

¶ 5 Here, Reyes asserts that the court committed error by failing to instruct the jury that two counts had been dismissed on directed verdict and that the dismissals should not affect their deliberations. Reyes, however, does not cite, nor does our research reveal, any case holding that failure to instruct the jury about dismissed counts is in fact error.

¶ 6 Reyes points to several cases where Arizona and federal circuit courts have noted that the jury was instructed not to speculate or consider why a particular count or co-defendant was dismissed. Our review of those cases reveals that the instructions were not required by law. *See, e.g., State v. Barnett*, 111 Ariz. 391, 393, 531 P.2d 148, 150 (1975) (reasoning that the trial court's instruction not to speculate about co-defendant's dismissal was not a comment on the evidence); *Young v. Envtl. Air Prods., Inc.*, 136 Ariz. 206, 213, 655 P.2d 88, 95 (App.1982) (noting that it was proper to instruct the jury about a co-defendant's dismissal to avoid confusion since the jury was told in closing arguments it could base its decisions on the dismissed co-defendant's conduct); *United States v. Montgomery*, 150 F.3d 983, 1000 (9th Cir.1998) (rejecting appellant's argument that the trial court's curative instruction regarding co-defendant's dismissal due to insufficient evidence created a presumption of sufficient evidence against the remaining defendants). Moreover, the court told the jurors what charges they were to consider, the elements of those charges, and how they were to consider whether the State had proved the charges beyond a reasonable doubt. Although the court could have told the jury not to speculate about why the two charges were dismissed, it was not required

---

1. The counts dismissed by the court after the Arizona Rule of Criminal Procedure 20 motion

were not included in the final jury instructions.

to do so, and the failure to sua sponte give the instruction was not error.

¶ 7 Additionally, Reyes has failed to demonstrate any prejudice resulting from the alleged error. *Henderson,* 210 Ariz. at 567, ¶ 20, 115 P.3d at 607. Although Reyes speculates that the jury may have guessed that the conspiracy and illegal control counts had been dismissed for lack of evidence, thereby creating a presumption that there was sufficient evidence to convict on the remaining charges, there is no support for his speculation. The jury was properly instructed, and we presume the jury followed its instructions to "decide each count separately on the evidence with the law applicable to it." *See State v. Newell,* 212 Ariz. 389, 403, ¶ 68, 132 P.3d 833, 847 (2006) ("We presume that the jurors followed the court's instructions."). The fact that the jury acquitted Reyes of one count of selling marijuana, found him guilty of lesser-included offenses and was hung on the money laundering charge shows that it carefully considered the evidence and did not presume there was sufficient evidence to convict him on all remaining counts. Consequently, we find no error in the court's failure to instruct the jury regarding the dismissed counts.

## II

¶ 8 The court ordered Reyes to submit to DNA testing and pay the applicable fee for the cost of the testing pursuant to Arizona Revised Statutes ("A.R.S.") section 13–610 (West 2013). Reyes objects to that portion of the order that requires him to pay the cost of the DNA testing and argues that the order violates his due process rights because the statute does not authorize the court to impose a fee. Although we review a court's sentencing decision for an abuse of discretion, *State v. Ward,* 200 Ariz. 387, 389, ¶ 5, 26 P.3d 1158, 1160 (App.2001), we review the court's interpretation of the statute de novo. *Moore v. Browning,* 203 Ariz. 102, 108, ¶ 21, 50 P.3d 852, 858 (App.2002). "[K]eeping in mind that our primary focus is 'to discern and give effect to legislative intent,'" *id.* (quoting *Hobson v. Mid–Century*

*Ins. Co.,* 199 Ariz. 525, 529, ¶ 8, 19 P.3d 1241, 1245 (App.2001)), we first look to the language of the statute. *Kriz v. Buckeye Petroleum Co., Inc.,* 145 Ariz. 374, 377, 701 P.2d 1182, 1185 (1985).

¶ 9 Section 13–610(A) provides that the Department of Corrections "shall secure a sufficient sample of blood or other bodily substances for deoxyribonucleic acid [DNA] testing" of any person sentenced to a term of imprisonment. The statute, however, does not identify who is to incur the cost of testing. When a statute is silent regarding an issue, "we must look beyond the statutory language and consider the statute's effects and consequences, as well as its spirit and purpose." *Calmat of Ariz. v. State ex rel. Miller,* 176 Ariz. 190, 193, 859 P.2d 1323, 1326 (1993).

¶ 10 The legislative history of § 13–610[2] indicates that its primary objective "is to aid investigative efforts in identifying repeat offenders by 'matching up' a person with a [certain] crime." *See Maricopa Cnty. Juv. Action Nos. JV–512600 & JV–512797,* 187 Ariz. 419, 422, 930 P.2d 496, 499 (App. 1996); *DNA Testing of Sexual Offenders: Minutes of Hearing on S.B. 1217 Before the S. Judiciary Comm.,* 41st Leg., 1st Sess. (Feb. 16, 1993) (statements of Todd Griffith, Crime Laboratory Superintendent, Department of Public Safety); *DNA Testing of Sexual Offenders: Minutes of Hearing on S.B. 1217 Before the S. Appropriations Comm.,* 41st Leg., 1st Sess. (Feb. 24, 1993) (statements of Rob Carey, Deputy Attorney General, and Todd Griffith, Crime Laboratory Superintendent, Department of Public Safety). In order to achieve the objective, the legislature established the Arizona DNA Identification System "for the purpose[ ] of conducting [DNA] testing and analysis pursuant to § 13–610" within the same bill. A.R.S. § 41–2418(A) (West 2013); S.B. 1217, 41st Leg., 1st Sess. (1993) (enacting A.R.S. § 41–2418). And, to finance the DNA Identification System, the legislature created the Arizona DNA Identification System Fund and funded it using surcharge monies on fines pursuant to § 12–116.01 (West 2013).

2. Arizona's mandatory DNA statute, originally enacted as A.R.S. § 13–4438, was renumbered and amended to apply to all convicted felons in 2002. S.B. 1396, 45th Leg., 2d Sess. (2002).

A.R.S. § 41–2419(C) (West 2013) (surcharges to be "used for implementing, operating and maintaining [DNA] testing and for the costs of administering the system"); S.B. 1217, 41st Leg., 1st Sess. (1993) (enacting A.R.S. § 41–2419).

¶ 11 The legislature did not direct that convicted felons pay the cost of the testing. Instead, and pursuant to § 12–116.01, any person who must pay a criminal fine, a civil traffic fine, or a fine for violating certain local ordinances relating to operating a vehicle, or for violating a game and fish statute, must pay a surcharge, a portion of which is used for the DNA Identification System Fund. A.R.S. §§ 12–116.01, 41–2401(D)(6) (West 2013). If the legislature wanted a convicted felon to pay the cost of his or her DNA testing,[3] we presume it would say so expressly, as it has done so in other statutes. *See, e.g.,* A.R.S. § 13–902(G) (West 2013) (permitting the court to "impose a fee on the probationer to offset the cost of the [electronic] monitoring device required by this subsection"); A.R.S. § 31–467.06(A) (West 2013) (mandating that any probationer or parolee being supervised in Arizona "pay … a monthly supervision fee of not less than sixty-five dollars"); A.R.S. § 11–459(K) (West 2013) (requiring a prisoner in a home detention program to "bear the cost of all testing, monitoring and enrollment in alcohol or substance abuse programs"). Because the legislature did not specifically state that a convicted felon has to pay a specific portion of the cost associated with his DNA testing in § 13–610, there is no basis for a court to order a convicted defendant to directly pay the testing fee.

¶ 12 The State contends, however, that the court did not err because the legislature has expressly authorized courts to impose fines and surcharges on convicted felons pursuant to A.R.S. §§ 13–801 and 12–116.01 (West 2013). We disagree.

¶ 13 First, although Reyes can be fined as part of his sentence, and was, the order that he pay the DNA testing fee was not a fine under § 13–801(A) for the commission of the felonies. Nor can the fee be a direct payment surcharge under § 12–116.01 because a portion of the surcharges imposed pursuant to a fine is used to fund the DNA Identification System Fund. Furthermore, the State's argument is undercut by the fact that the court did not indicate that the DNA testing fee was being imposed as a fine or surcharge at the sentencing hearing, and added the fee sometime after the hearing. *See State v. Powers,* 154 Ariz. 291, 295, 742 P.2d 792, 796 (1987) (holding that the proper way to impose a statutorily-authorized fee is "in open court with the defendant present" rather than by minute entry).

¶ 14 Consequently, because § 13–610 does not require a convicted defendant to be assessed the cost of his DNA testing, there was no basis for the provision to be imposed. As a result, we vacate the portion of the sentencing order requiring Reyes to pay for his DNA testing. *See Jackson v. Schneider ex rel. Cnty. of Maricopa (State),* 207 Ariz. 325, 328, ¶ 10, 86 P.3d 381, 384 (App.2004) ("When a trial court exceeds its sentencing authority, the sentence is void as to the excess portion.").

### CONCLUSION

¶ 15 Based on the foregoing, we affirm Reyes' convictions and sentences, but vacate that portion of the sentencing order requiring him to pay for his DNA testing.

CONCURRING: SAMUEL A. THUMMA and DONN KESSLER, Judges.

---

3. Some states have enacted statutes authorizing a court or state agency to impose a DNA testing surcharge on convicted felons. *See, e.g.,* Fla. Stat. Ann. § 943.325 (West 2013); 730 Ill. Comp. Stat. Ann. 5/5–4–3(j) (West 2013); Mich. Comp. Laws Ann. § 712A.18k (West 2013); Neb.Rev. Stat. Ann. § 29–4106(3) (West 2013); N.J. Stat. Ann. § 53:1–20.29 (West 2013); N.Y. Penal Law § 60.35 (West 2013); N.D. Cent.Code Ann. § 31–13–03(3) (West 2013); Wis. Stat. Ann. § 973.046 (West 2013). Others do not impose the cost on convicted felons. *See* Conn. Gen.Stat. Ann. § 54–102g (West 2013); Ga.Code Ann. § 35–3–160 (West 2013); Va.Code Ann. § 19.2–310.2:1 (West 2013); Wash. Rev.Code Ann. § 43.43.754 (West 2013). Hawaii and Ohio, like Arizona, have established state funds to pay the cost of DNA testing. *See* Haw.Rev.Stat. § 706–603 (West 2013); Ohio Rev.Code Ann. § 2743.191 (West 2013).