westlawnext
NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

STATE OF ARIZONA, *Appellee,*

*v.*

WESLEY WILLIAM MCGRIFF, *Appellant*.

No. 1 CA-CR 13-0420
FILED 05-27-2014

---

Appeal from the Superior Court in Maricopa County
No. CR2012-140954-001
The Honorable Margaret R. Mahoney, Judge

**AFFIRMED IN PART, VACATED IN PART**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Colby Mills
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Louise Stark
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge John C. Gemmill delivered the decision of the Court, in which Judge Peter B. Swann and Judge Patricia A. Orozco joined.

---

**G E M M I L L**, Judge:

¶1      Wesley William McGriff appeals from his convictions and sentences of two counts of sale or transportation of dangerous drugs, class 2 nondangerous felonies. McGriff contends the trial court abused its discretion by denying McGriff's motion for new counsel and erred in ordering him to pay for his DNA testing. For the reasons that follow, we affirm the order denying the motion for new counsel but vacate the requirement that he pay for the DNA testing.

## BACKGROUND

¶2      As part of an operation to identify individuals involved in the sale of drugs or trafficking of stolen property, the Mesa Police Department set up a storefront that bought and sold electronics and other similar items. The store, set up in a high crime area in Mesa, operated like a pawn shop with police officers disguised as employees. The operation lasted from December 2011 to July 2012.

¶3      In March of 2012, McGriff entered the store to sell his property. Officer Monarrez bought the property, gave McGriff a card with his cell number on it, and encouraged him to come again with any property, stolen or not, and any "drug connection" he knew about. Several months later, on two separate occasions, McGriff sold Officer Monarrez a usable amount of methamphetamine.

¶4      McGriff was indicted on August 9, 2012 and charged with two counts of sale or transportation of dangerous drugs, class 2 felonies. Before trial, McGriff filed a letter with the court requesting new counsel citing a breakdown of communication with his lawyer, Diego Rodriguez, and claiming he felt "uneasy" with Rodriguez's lawyering style and "uncomfortable" with Rodriguez's personal connections. The court denied the motion concluding that there was no "irreconcilable conflict." McGriff signed a plea agreement, but walked out of the deal before it was complete. He also failed to appear at his three-day trial where he was convicted in absentia of both counts. After McGriff failed to appear for his trial, Rodriguez moved to withdraw as counsel, citing irreparable breakdown. The court granted the motion and new counsel was appointed for sentencing. McGriff received a mitigated sentence of 10.5 years and was ordered to pay back the $225.00 in "buy money" to Mesa Police.

¶5      McGriff timely appeals and we have jurisdiction pursuant to

Arizona Revised Statutes ("A.R.S.") §§ 12-120.21(A)(1) and 13-4031, and 13-4033(A).

## ANALYSIS

¶6        McGriff raises two issues on appeal.  First, McGriff claims the trial court abused its discretion by failing to inquire into allegations in McGriff's motion for new counsel, and subsequently denying the motion. Second, McGriff challenges the court's order requiring him to pay for DNA testing.

### Motion for New Counsel

¶7        A trial court's decision to deny a motion for new counsel will not be disturbed absent a clear abuse of discretion. *State v. Moody*, 192 Ariz. 505, 507, ¶ 11, 968 P.2d 578, 580 (1998).

¶8        Although a criminal defendant has a Sixth Amendment right to representation by competent counsel, the defendant is not entitled to counsel of choice or to a meaningful relationship with his or her attorney. *See* U.S. Const. amend. VI; *see also* Ariz. Const. art. 2, § 24; A.R.S. § 13-114(2); *Moody*, 192 Ariz. at 507, ¶ 11, 968 P.2d at 580 (citations omitted).  To protect a defendant's Sixth Amendment right to counsel, a trial judge must inquire on the record as to the basis of a defendant's request for substitution of counsel. *State v. Torres*, 208 Ariz. 340, 343, ¶ 7, 93 P.3d 1056, 1059 (2004).

¶9        In *Moody*, the Arizona Supreme Court developed factors designed to balance the rights and interests of a defendant with judicial economy, to assist the trial court in determining whether to grant a motion for new counsel:

> These include whether an irreconcilable conflict exists between counsel and the accused, and whether new counsel would be confronted with the same conflict; the timing of the motion; inconvenience to witnesses; the time period already elapsed between the alleged offense and trial; the proclivity of the defendant to change counsel; and quality of counsel.

*Moody*, 192 Ariz. at 507, ¶ 11, 968 P.2d at 580.

¶10        At the final pretrial conference, the trial court permitted McGriff to voice his concerns with his current counsel, Rodriguez.  To

begin the discussion, the trial court emphasized, "the law is abundantly clear, the defendant isn't entitled to . . . . his attorney of his or her choice…. But you need to tell me, in your own words here, why you think your relationship with Mr. Rodriguez as an attorney, can't continue in this case." McGriff expressed concern with Rodriguez's explicit dislike of crystal methamphetamine, and his friendship with the prosecutor. He also stated,

> You know, I just don't feel like, you know, he is representing me right from the beginning. You know, in the whole time I have had one meeting with him. Any time we try to talk, you know, it gets like a little heated. And I just don't feel comfortable with him representing me.

¶11 The trial court, citing *Moody*, reminded McGriff that a motion for new counsel will be granted when there is evidence of a complete breakdown of communication or irreconcilable conflict, but that mere "disagreements as to how the case is handled" or the "attorney's attitude" do not rise to the level of irreconcilable conflict. It asked McGriff again if there was any other reason why a new attorney was necessary, to which McGriff replied that he had only one ten minute meeting with Rodriguez, and that any time they talk, he "push[es] me into a plea, which….might be the best, but I just don't feel comfortable with him representing me."

¶12 Rodriguez was not present at this pretrial conference. His law partner, Adrian Fontes, attended instead of Rodriguez and spoke on his behalf. In response to the trial court, he reported that he had briefed the issue with Rodriguez and that their office was taking no position on the request. Fontes mentioned that despite some communications being "a little rough around the edges," they had achieved a more favorable plea deal for McGriff. Fontes reassured the court, "there is no problem with counsel's communication insofar as it is substance" and that McGriff was receiving "clear information from our office, and he is reacting in a way that communicates that he understands what he is hearing. "

¶13 Our supreme court noted in *State v. Cromwell*, 211 Ariz. 181, 186-87, ¶ 29, 119 P.3d 448, 453-54 (2005) that a single allegation of lost confidence in counsel does not require the appointment of new counsel, and disagreements over defense strategies do not constitute an irreconcilable conflict. Further, a defendant's allegations "must go beyond personality conflicts or disagreements with counsel over trial strategy; a defendant must allege facts sufficient to support a belief that an

irreconcilable conflict exists warranting the appointment of new counsel in order to avoid the clear prospect of an unfair trial." *Id*. at ¶ 30.

**¶14**      Here, there is minimal evidence of a continued "strained relationship between lawyer and client" and the record is not "replete with examples of a deep and irreconcilable conflict" between McGriff and Rodriguez, in contrast to the situation in *Moody*. *Moody*, 192 Ariz. at 507-08, ¶¶ 16, 13, 968 P.2d at 580-81. Instead, McGriff's concerns more closely resemble the defendant's concerns in *Cromwell* because they were primarily focused on McGriff's issues with Rodriguez's personality and defense strategy and did not demonstrate "intense acrimony." *Cromwell*, 211 Ariz. at 188, ¶ 37, 119 P.3d at 455. Because we discern no clear abuse of discretion, we affirm the trial court's denial of McGriff's motion.

## Payment for DNA Testing

**¶15**      Finally, McGriff challenges the court's order requiring him to pay for his DNA testing. This court has held that a sentencing court is not permitted to order the defendant to pay the costs of DNA testing. *State v. Reyes*, 232 Ariz. 468, 472, ¶ 14, 307 P.3d 35, 39 (App. 2013) (requiring a defendant to pay for DNA testing is error). Therefore, we vacate the portion of the sentencing order requiring McGriff to pay for DNA testing.

## CONCLUSION

**¶16**      For these reasons, we affirm McGriff's convictions and sentences with the exception that we vacate the order requiring McGriff to pay for DNA testing.



Ruth A. Willingham · Clerk of the Court
F I L E D : gsh

5