NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

STATE OF ARIZONA, *Appellee*,

*v.*

ALFREDO HERRERA, *Appellant*.

No. 1 CA-CR 12-0732
FILED 07-22-2014

---

Appeal from the Superior Court in Maricopa County
No. CR2007-007522-003
The Honorable Karen L. O'Connor, Judge

**AFFIRMED AS MODIFIED**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

Janelle A. McEachern, Chandler
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge Jon W. Thompson delivered the decision of the Court, in which Presiding Judge Randall M. Howe and Judge Michael J. Brown joined.

---

**T H O M P S O N**, Judge:

¶1 Alfredo Herrera (defendant) timely appeals his convictions and sentences for one count of first degree murder, five counts of attempted first degree murder, five counts of aggravated assault, one count of drive-by shooting, one count of unlawful flight from law enforcement vehicle, one count of disorderly conduct, and one count of misconduct involving weapons. Pursuant to *Anders v. California*, 386 U.S. 738 (1967), and *State v. Leon*, 104 Ariz. 297, 451 P.2d 878 (1969), counsel for defendant has advised us that, after searching the entire record, she has been unable to discover any arguable questions of law and has filed a brief requesting this court to conduct an *Anders* review of the record. Defendant has been afforded an opportuntity to file a supplemental brief *in propia persona*, and he has not done so.

## FACTS AND PROCEDURAL HISTORY

¶2 On April 1, 2005, Phoenix Police Department officers responded to a 911 call at defendant's home in Phoenix. Defendant informed the officers that he was standing outside by his white Mercedes when three vehicles, a gray or black SUV and two Nissan type vehicles, drove by and fired gunshots at his house. The officers noticed several bullet strikes to the outside of the house and window, and through the rear window of defendant's vehicle. Defendant admitted that he had used a gun to fire back at the vehicles and that he was a prohibited possessor, but the officers were unable to locate a gun. Defendant became increasingly agitated, and the officers left after determining defendant would not be cooperative in the investigation. Officers returned to defendant's home later that evening after receiving a call that one of the vehicles suspected to be involved in the shooting repeatedly drove by the house. While there, officers noticed a gray vehicle slowly drive by defendant's house. The officers unsuccessfully attempted to stop the vehicle, but were able to secure its license plate number.

¶3 The following evening, J.G. was driving his white Ford Taurus in defendant's neighborhood trying to find the location of a party with his two cousins, C.V. and Jonathan, and three friends, G.S., Y.R., and L.Z. Defendant and multiple accomplices were at defendant's house trying to guard it in case the shooters from the previous night returned. Defendant carried a 9 mm gun and a walkie-talkie, and was wearing a bullet-proof vest. His accomplices also carried walkie-talkies and weapons, including a black assault rifle and an AK-47. After defendant noticed J.G.'s vehicle drive by his house three times, he and four

accomplices jumped into defendant's Mercedes and chased after it. When J.G. stopped his vehicle at a stop sign, defendant drove up alongside J.G.'s car and stopped next to him. Defendant jumped out of his car and stated, "Why you all keep passing by my house?" Defendant and his accomplices then immediately began shooting at J.G. and the other victims.

¶4 Upon hearing the gunshots, J.G. quickly sped off through the neighborhood "trying to get away." Defendant chased after J.G.'s vehicle, stating, "I got more rounds." J.G. called 911 as he drove, while defendant swerved in and out of traffic trying to catch up to J.G.'s vehicle. When defendant caught up with the J.G.'s vehicle, he fired additional gunshots at the car. J.G. estimated that at least twenty to thirty rounds were shot at his vehicle. Although J.G. could not see the driver, he was later able to identify two of defendant's accomplices, one of whom was wearing a blue Dodgers' hat.

¶5 While J.G. slowed his car to change directions, L.Z. jumped from the vehicle and ran to a nearby house for assistance. J.G. continued driving towards a hospital until he was eventually able to get emergency vehicles to stop and render assistance. As a result of the shootings, J.G. sustained gunshot injuries to his face, arm, and back; Y.R. sustained injuries to her spinal cord that left her paralyzed from the waist down; C.V. sustained injuries to his knee and hand; L.Z. sustained injuries to her fingers and legs; G.S. sustained a head injury; and Jonathan died from his gunshot injuries. All of the victims feared for their lives during the incident.

¶6 During the chase, an off-duty Phoenix police officer heard approximately eight to ten gunshots and observed what appeared to be gunshots coming from a Mercedes and striking a white vehicle traveling ahead of it. Another officer also observed defendant's white Mercedes travelling at a high rate of speed. The officer followed defendant's vehicle, watching as it switched lanes back and forth, before losing sight of the vehicle when it abruptly turned onto an access road. A police helicopter assisted the officers and continued to follow defendant's vehicle. Defendant's accomplices eventually jumped out of the vehicle and fled. Defendant drove his vehicle into the driveway of a house and then disappeared from view in the surrounding vegetation. Officers found defedant's accomplices hiding in a nearby yard and under a truck, whereby they were taken into custody and arrested. Officers also found an empty gun holster on the driver's side floorboard of defendant's vehicle; and collected two weapons, one of which was a black assault

riffle; shell casings; a blue Dodgers' hat; walkie-talkies; and a bullet proof vest, all in the vicinity of defendant's abandoned Mercedes. Defendant was subsequently arrested on August 30, 2007.

¶7            After a jury trial, the jury found defendant guilty of one count of first murder, a class 1 dangerous felony (count 1); five counts of attempted first degree murder, class 2 dangerous felonies (counts 2 - 6); five counts of aggravated assault,  class 3 dangerous felonies (counts 7 - 11); one count of drive-by-shooting, a class 2 dangerous felony (count 12); one count of unlawful flight from a law enforcement vehicle, a class 5 felony (count 13); one count of disorderly conduct, a class 6 dangerous felony (count 15); and one count of misconduct involving a weapon, a class 4 felony (count 17).  The jury also found an aggravating circumstance as to count one: defendant's prior conviction for a serious  offense. Additionally, the court found that defendant had four prior felony convictions when he committed the offenses.  The trial court sentenced defendant to a term of natural life on count 1; maximum, consecutive twenty-one year prison terms on counts 2 through 6; maximum, concurrent fifteen year prison terms on counts 7 through 11; a maximum, concurrent twenty-one year prison term on count 12; a presumptive, concurrent five year prison term on count 13; a maximum, concurrent three year prison term on count 15; and a presumptive, concurrent ten year prison term on count 17.  Defendant received 1,913 days presentence incarceration credit on each count, with the exception of counts 2 through 6.

## DISCUSSION

¶8            After reviewing the entire record for reversible error, we find none.  *See Leon*, 104 Ariz. at 300, 451 P.2d at 881. All of the proceedings were conducted in compliance with the Arizona Rules of Criminal Procedure, and the sentences imposed were within the statutory limits.  Defendant was present at all critical stages of the proceedings and was represented by counsel.  Furthermore, based on our review of the record before us, substantial evidence supports the jury's verdicts.

¶9            We have, however, noted an error in the sentencing minute entry.  The sentencing minute entry ordered defendant to "submit to DNA testing for law enforcement identification purposes and pay the applicable fee for the cost of that testing in accordance with [Arizona Revised Statutes ("A.R.S.") section] 13–610 [(Supp. 2013)]."  However, A.R.S. § 13–610 does not authorize the trial court to order a convicted person to pay for the cost of DNA testing. *State v. Reyes*, 232 Ariz. 468, 472, ¶ 14, 307

P.3d 35, 39 (App. 2013). Therefore, we vacate that portion of the sentencing minute entry which requires defendant to do so. Accordingly, we affirm defendant's convictions and sentences as modified.

**¶10** Pursuant to *State v. Shattuck*, 140 Ariz. 582, 584-85, 684 P.2d 154, 156-57 (1984), defendant's counsel's obligations in this appeal are at an end. Unless, upon review, counsel discovers an issue appropriate for petition for review to the Arizona Supreme Court, counsel must only inform defendant of the status of this appeal and defendant's future options. *Id.* Defendant has thirty days from the date of this decision to proceed, if he desires, with a *pro per* motion for reconsideration or petition for review.



Ruth A. Willingham · Clerk of the Court
F I L E D : gsh

5