NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE of ARIZONA, *Appellee*,

*v.*

JOHN HENRY TOMLIN, *Appellant*.

No. 1 CA-CR 13-0506

FILED 1-13-2015

Appeal from the Superior Court in Maricopa County
No. CR2012-100410-001
The Honorable Karen L. O'Connor, Judge

**AFFIRMED AS MODIFIED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Adriana M. Zick
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Terry J. Reid
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge John C. Gemmill delivered the decision of the Court, in which Presiding Judge Patricia K. Norris and Judge Lawrence F. Winthrop joined.

---

**G E M M I L L**, Judge:

¶1        John Tomlin appeals his conviction and sentence for possession or use of narcotic drugs, a class four felony.  He argues that in closing argument the prosecution commented on his right to remain silent in violation of his rights under the Fifth Amendment.  He also asserts that the trial court committed fundamental error by ordering him to pay a fee for DNA testing.  For the following reasons, we disagree that his Fifth Amendment rights were violated and affirm his conviction and sentence.  We agree that the trial court committed fundamental error ordering him to pay for DNA testing and modify his sentence to delete the order that he pay for DNA testing.

**BACKGROUND**

¶2        In January 2012, Mesa Police Detective G. was on duty in the evening.  Detective G. is part of an enforcement patrol that monitors bicycle, traffic, and pedestrian stops in the area.  As part of his duties, the detective looks for criminal activity including illegal drug use.

¶3        Detective G. observed Tomlin that night from about 100 feet away.  Through his binoculars, the detective was able to see Tomlin on a bicycle without any activated lights.  Mesa City code and state law provisions require activated lights while riding a bicycle at night.

¶4        Detective G. drove over near Tomlin and approached him.  After making initial contact, the detective asked Tomlin if "he had any guns or knives on his person."  Tomlin stated that he had a knife and immediately reached into his pocket, at which time Detective G., fearing that Tomlin was reaching for a knife, grabbed Tomlin's hand or wrist.  As the detective wrestled Tomlin to the ground, he observed a small, shiny white or silver object, about the size of a nickel, fall out of Tomlin's pocket.  A Mesa Police Sergeant arrived at the scene and helped place Tomlin into handcuffs.

¶5        Within approximately five to ten seconds of Tomlin's cuffing, Detective G. recovered the object from the ground. Detective G. recognized it as the object that he saw fall out of Tomlin's pocket and, from his training and experience, recognized the black-rock substance as a usable quantity of heroin. The detective testified that Tomlin spoke only to identify himself as "Virgil."

¶6        A forensic investigator conducted appropriate color tests on the substance, and found that the substance was 505 milligrams of heroin, a narcotic drug in a usable quantity. The jury found Tomlin guilty of possession or use of narcotic drugs. The court thereafter found nine prior felony convictions and sentenced Tomlin to 10 years in prison.

¶7        Tomlin timely appeals, and we have jurisdiction under Article 6, Section 9, of the Arizona Constitution and Arizona Revised Statutes ("A.R.S") §§ 12-120.21(A)(1), 13-4031, and 13-4033(A)(1).

## DISCUSSION

¶8        Tomlin's main argument on appeal is that the prosecutor violated his constitutional right to remain silent under the Fifth Amendment by commenting on his right to remain silent during closing argument. This court reviews issues of constitutional law de novo. *State v. Parker*, 231 Ariz. 391, 398, ¶ 8, 296 P.3d 54, 61 (2013).

¶9        Tomlin challenges three statements by the prosecutor as violating his right to remain silent. Tomlin objected to the first two comments and we therefore review those comments under a harmless error standard. *State v. Henderson*, 210 Ariz. 561, 567, ¶ 18, 115 P.3d 601, 607 (2005). Tomlin did not to object to the prosecutor's third comment, and acknowledges that we must therefore conduct a fundamental error review regarding this comment. *Id.* at 567, ¶ 19, 115 P.3d at 607. "To prevail under this standard of review, a defendant must establish both that fundamental error exists and that the error in his case caused him prejudice." *Id.* at 567, ¶ 20, 115 P.3d at 607.

¶10       Both federal and state law prohibit the use against a defendant of his right to remain silent. Ariz. Const. art. 2, § 10; A.R.S. § 13-117; *see Griffin v. California*, 380 U.S. 609, 615 (1965) (stating that the Fifth Amendment "forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt"); *State v. Rutledge*, 205 Ariz. 7, ¶ 26, 66 P.3d 50, 55 (2003).

¶11        The prosecutor's first challenged statement was made during her closing argument:

[*First comment at issue*]

> PROSECUTOR: That brings us back then to the first element, whether the defendant knowingly possessed it.  In regards to knowingly and the defendant's knowledge, it's hard to get in someone's mind. *We don't hear from the defendant that he knew it was heroin*, how can you tell?
>
> The good news is that you don't have to check your common sense at the door.  Your jury instructions basically tell you that.  You can consider direct and circumstantial evidence. You can consider the totality of the circumstances, and you can make inferences about the evidence that was presented.

(Emphasis added.)

¶12        Tomlin objected to the comment during a bench conference. The prosecutor responded that she did not intend to make a statement on Tomlin's right not to testify, and she could clarify.  Tomlin's advisory counsel asked if the prosecutor would like to clarify during her rebuttal. The prosecutor responded that she would clarify her point during rebuttal argument.  The court made no ruling at that time.

¶13        During her rebuttal argument, the prosecutor made the second and third comments at issue:

[*Second comment at issue*]

> PROSECUTOR: Regarding knowledge, to make it clear, the defendant has an absolute right to remain silent. *You didn't hear from him*, and that's absolutely fine.  The burden is on the State. It's my burden to prove to you - -
>
> MR. TOMLIN: Objection, Your Honor.
>
> THE COURT: Sustained.

[*Third comment at issue*]

PROSECUTOR: It's my burden to prove to you that the defendant is guilty, and one of the things that I have to show is that he had knowledge.

You heard from the officers that after the — directly after the incident happened, *they tried to have a conversation with the defendant. His only response was to say that his name was Virgil, that they jumped him for no reason. He refused to provide his truthful name.*

That doesn't mean that he had lacked the knowledge of knowing that what he had in his hand was an illegal substance.

(Emphasis added.)

¶14            After the jury commenced deliberations, Tomlin reiterated his objections and moved for a mistrial. The court denied the motion, finding that there was no prosecutorial misconduct nor intent to unnecessarily comment on Tomlin's right to remain silent. The court stated that the prosecutor was only attempting to speak about comments that Tomlin had made to the officers at the time of his arrest.

¶15            To be considered improper, "the prosecutor's comments must be calculated to direct the jurors' attention to the defendant's exercise of his Fifth Amendment privilege." *State v. McCutcheon*, 159 Ariz. 44, 45, 764 P.2d 1103, 1104 (1988); *see also Rutledge*, 205 Ariz. at 13, ¶ 33, 66 P.3d at 56 ("Whether a prosecutor's comment is improper depends upon the context in which it was made and whether the jury would naturally and necessarily perceive it to be a comment on the defendant's failure to testify."). Specifically, "to be constitutionally improper the comment must (1) be adverse, in that it supports an unfavorable inference against the defendant, and (2) operate as a penalty for defendant's exercise of his constitutional right." *State v. Schrock*, 149 Ariz. 433, 438, 719 P.2d 1049, 1054 (1986) (citing *State v. Mata*, 125 Ariz. 233, 238, 609 P.2d 48, 53 (1980)).

¶16            The first and second statements made by the prosecutor were inappropriate because they drew attention to the fact that Tomlin did not testify. The prosecutor should not have said the jury did not "hear from" Tomlin. Nevertheless, when viewed in context, the first two statements do not constitute reversible error. The first statement was an attempt to

explain the State's burden of proof by circumstantial evidence given that Tomlin did not testify. The second statement was essentially a restatement of the jury instructions. The court had instructed the jury that "[a] defendant in a criminal case has a constitutional right to not testify at trial, and the exercise of that right cannot be considered by the jury in determining whether a defendant is guilty or not guilty." Although these comments by the prosecutor were inappropriate, they were related to the evidence and did not amount to unconstitutional commentary on Tomlin's exercise of his Fifth Amendment rights. Regarding the first two of the three challenged statements, therefore, we find no reversible error.

¶17 The third challenged statement, however, is more troubling. The prosecutor's third statement likely caused an unfavorable inference that Tomlin lied about his name and declined to talk with the officers because he was aware of the possession of narcotics. Therefore, the prosecutor's statements operated as a penalty on Tomlin's constitutional right to remain silent. We conclude that fundamental error occurred. *See State v. Cannon*, 118 Ariz. 273, 274, 576 P.2d 132, 133 (1978) (finding prosecutor's comment on defendant's refusal to answer questions about whereabouts on night in question was fundamental error).

¶18 Because Tomlin did not specifically object to the last comment, we must determine whether the third statement caused prejudice, under the fundamental error standard of review. *Henderson*, 210 Ariz. at 567, ¶ 19, 115 P.3d at 607. To establish prejudice, Tomlin has the burden of showing that absent the improper comments, a reasonable jury could have reached a different result. *Id*. at 569, ¶ 27, 115 P.3d at 609. If we find that there is overwhelming evidence of guilt, we may conclude that Tomlin has failed to meet this burden of proof. *See State v. Ramos*, 235 Ariz. 230, 236–35, ¶¶ 18-20, 330 P.3d 987, 993–94 (App. 2014) (concluding that although prosecutor's comment was fundamental error, defendant failed to establish prejudice).

¶19 Tomlin argues the error in this case was prejudicial. He contends the only evidence connecting him to the heroin is Detective G.'s testimony that he saw Tomlin drop the package containing the drug. Tomlin asserts there are several discrepancies with Detective G.'s testimony and without the improper statements by the prosecutor, the jury could have found Detective G.'s testimony was not credible.

¶20 First, there was a discrepancy in the dates that were documented and the actual date of the incident. The date on the paperwork

is different from the actual date of the incident because Detective G. was called out to an unrelated homicide before he could finish his booking paperwork for Tomlin. Therefore, the State argues that the paperwork was not completed and the heroin was not impounded until the early hours of the next day, thereby explaining the discrepancy.

**¶21** There is also a discrepancy of Detective G. using several different terms to describe the heroin. Detective G. used the descriptions "black-rock substance" and "brown-tar substance" interchangeably throughout the trial and in various documents. The State responds that the two descriptions are commonly used descriptions of heroin that Detective G. had learned through training and experience.

**¶22** Another discrepancy pertains to the location of the incident, which was 200 South Pomeroy. However, Detective G. had radioed the location to the dispatcher as 200 *North* Pomeroy. Detective G. testified that he had misstated the address due to the stress of the moment. The State notes that because the locations were only about a half mile apart and the incident did not really occur at a specific address, it was understandable that Detective G. could radio in the wrong address while trying to wrestle Tomlin to the ground.

**¶23** Tomlin also argues that Detective G.'s testimony should be discredited because the officers never found a knife on Tomlin. But the detective never testified to seeing a knife, only that Tomlin had said to him that he had a knife on his person as he began to reach into a pocket.

**¶24** We conclude that the discrepancies Tomlin raises to attack Detective G.'s testimony are satisfactorily explained by the evidence.

**¶25** To prove that Tomlin was guilty of a class 4 felony in violation of A.R.S. § 13-3408(A)(1), the State was required to establish that Tomlin had knowingly possessed or used a narcotic drug. "The crime of possession of narcotics requires a physical or constructive possession with actual knowledge of the presence of the narcotic substance." *State v. Lopez*, 27 Ariz. App. 408, 409, 555 P.2d 667, 668 (App. 1976). Possession may be supported by direct or circumstantial evidence as long as evidence links the defendant "to the narcotics in such a manner and to such an extent that a reasonable inference may arise that the defendant knew of the narcotics' existence and of its whereabouts.'" *Id.* (quoting *State v. Carr*, 8 Ariz. App. 300, 302, 445 P.2d 857, 859 (App. 1968)).

¶26      Tomlin argues that because the State did not present any DNA or fingerprint evidence, it failed to prove that he had possessed the heroin. The State contends there was overwhelming evidence presented at trial to find Tomlin knowingly possessed heroin. Detective G. testified to seeing Tomlin reach into his pocket and a silver, nickel sized object fall out. After detaining Tomlin, the detective recovered the object, which was only a foot away, within five to ten seconds.

¶27      Tomlin argues the evidence is not overwhelming because the area in which Detective G. retrieved the heroin was full of trash, dark, and within a high crime area. However, during the trial, Detective G. testified that the area was clean of any visible trash. Detective G. also stated that there were street lights in the area and he was equipped with a flashlight.

¶28      Detective G. stated that he did not see any other items in the immediate area that appeared to be drugs or drug paraphernalia. Detective G.'s description of the area was supported by the testimony of another officer who was present that night. Based on his training and experience, the detective also testified that drugs are valuable to drug users and he did not know drug users "to typically just discard their unused drugs out on the street."

¶29      On this record, we conclude that the evidence against Tomlin was overwhelming and Tomlin has not borne his burden of demonstrating that the prosecutor's unconstitutional comment on Tomlin's refusal to talk with the officers upon his arrest caused him prejudice. We therefore affirm his conviction.

¶30      The second issue that Tomlin raises is that the trial court committed fundamental error by ordering him to pay a fee for DNA testing. The State agrees with Tomlin and agrees this court should vacate that portion of Tomlin's sentence. This court has held that A.R.S. § 13-610 does not empower trial courts to require a convicted person to pay a fee for DNA testing. *State v. Pelaez*, 235 Ariz. 264, 266, 330 P.3d 1021, 1023 (App. 2014) (citing *State v. Reyes*, 232 Ariz. 468, 472, ¶ 14, 307 P.3d 35, 39 (App. 2013)). Therefore, we modify Tomlin's sentence by vacating the requirement that he pay for his DNA testing.

**CONCLUSION**

¶31      Although the prosecutor improperly commented on Tomlin's right to testify, we conclude the error was not prejudicial. We therefore

affirm Tomlin's conviction and sentence, except that we modify his sentence by vacating the portion requiring him to pay for DNA testing.



Ruth A. Willingham · Clerk of the Court
FILED: ama