NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

BENNY ANTONIO MARTINEZ, JR., *Appellant.*

No. 1 CA-CR 19-0009
FILED 1-14-2020

Appeal from the Superior Court in Maricopa County
No. CR2017-136818-001
The Honorable Dewain D. Fox, Judge

**AFFIRMED AS MODIFIED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Mark E. Dwyer
*Counsel for Appellant*

## MEMORANDUM DECISION

Presiding Judge Maria Elena Cruz delivered the decision of the Court, in which Judge Kent E. Cattani and Chief Judge Peter B. Swann joined.

**C R U Z**, Judge:

¶1     This appeal is filed in accordance with *Anders v. California*, 386 U.S. 738 (1967), and *State v. Leon*, 104 Ariz. 297 (1969).  Counsel for Benny Antonio Martinez, Jr., ("Martinez") has advised this court that counsel found no arguable questions of law and asks us to search the record for fundamental error.  Martinez was convicted of discharging a firearm at a non-residential structure and discharging a firearm within a municipality. Martinez pled guilty to possession of marijuana and paraphernalia. Martinez has filed a supplemental brief *in propria persona*, which the court has considered.   After reviewing the record, we affirm Martinez's convictions and sentences, but vacate the portion of the sentencing order requiring Martinez to pay for his DNA testing.

### FACTUAL AND PROCEDURAL HISTORY

¶2     We view the facts in the light most favorable to sustaining the verdicts and resolve all reasonable inferences against Martinez.  *See State v. Fontes*, 195 Ariz. 229, 230, ¶ 2 (App. 1998).

¶3     Martinez and Gina Armstrong ("Armstrong") were driving in Glendale when they got into a car accident with another car driven by A.G. While still in the car, Martinez grabbed his firearm and placed it in his waistband so that it was visible.  Martinez and Armstrong exited the car and started yelling at A.G.  Then, A.G. drove away, and Martinez pulled out his firearm and shot toward her car three times; two bullets hit the rear of A.G.'s car.

¶4     Martinez and Armstrong got back in the car and followed A.G. into a cul-de-sac, purportedly to get her license plate number. Martinez positioned the car at the entrance of the cul-de-sac to prevent A.G. from leaving.  A.G. then drove onto the sidewalk and left the cul-de-sac. Martinez and Armstrong continued to follow A.G. when A.G. lost control of her car and crashed into another car.

¶5	After receiving multiple calls of shots fired and a possible hit-and-run accident, officers from Glendale Police Department arrived at the scene of the second accident. Martinez told officers that he shot at A.G. because she tried to run over him. Officers then handcuffed Martinez and read him *Miranda* warnings. *See Miranda v. Arizona*, 384 U.S. 436 (1966). Martinez said he felt his life was in danger, but he also described how he jumped out of the way as the car passed him, regained his balance, turned, and shot the car as it drove away.

¶6	During the investigation, officers seized the firearm, photographed the cars, and seized paraphernalia and marijuana in Martinez's car. Officers also located the scene of the first accident and shooting. Officers recovered the three bullet casings and photographed the scene. However, the photos of the initial scene were lost by the Glendale Police Department during a change of their records management system.

¶7	The State charged Martinez with aggravated assault, discharging a firearm at a non-residential structure, discharging a firearm within a municipality, and possession of marijuana and paraphernalia. Martinez plead guilty to possession of marijuana and paraphernalia. The State proceeded to trial on the remaining charges.

¶8	At trial, A.G. testified that Martinez started shooting immediately after the accident and then she drove off. However, Martinez asserted that A.G. tried to run him over and that is why he then shot at her in self-defense and to prevent her from leaving the scene. However, Martinez also testified that:

> I just seen her put her car in drive, and she drove -- she tried to hit me with her car. I had to jump out of my way -- jump out of the way. After I gained my balance, that's when I fired three shots at her -- the back of her vehicle.

¶9	Martinez further testified that at the time he fired his gun, he did not think A.G.'s car could have hit him and that he was not in immediate danger.

¶10	Defense counsel presented expert testimony on the police's failure to impound the car for further investigation and the failure to take measurements at the initial accident, which—according to the defense—may have produced evidence that could have corroborated Martinez's story. Defense counsel also moved for Arizona Rule of Criminal Procedure 20 judgment of acquittal. The court found that substantial evidence existed as to all charges and denied the motion.

¶11      Before closing arguments, the parties agreed that a *Willits* instruction was appropriate because the police lost the photos of the initial scene.  *See State v. Willits*, 96 Ariz. 184 (1964).  The court gave the *Willits* instruction without limiting it to the lost photos.  The court also instructed the jury as to self-defense, among other instructions.

¶12      The jury found Martinez guilty of discharging a firearm at a non-residential structure and discharging a firearm within a municipality. The court declared a mistrial as to the aggravated assault charge when the jury was unable to reach a unanimous verdict.  The court also found that the firearm charges were dangerous offenses because the jury found that Martinez discharged a firearm.

¶13      The court then conducted the sentencing hearing in compliance with Martinez's constitutional rights and Arizona Rule of Criminal Procedure 26.  The court found the following to be mitigating factors: Martinez's age and maturity level at the time of the offense; a lack of positive parental figures, poverty, and emotional neglect during Martinez's childhood; and no criminal history.  Martinez was sentenced to a term of six and one-half years for discharging a firearm at a non-residential structure, a term of two and one-quarter years for discharging a firearm within a municipality, and two terms of one year for both drug charges including fines.  The court ordered that the sentences be served concurrently, and presentence credit for thirty-nine days served.  The court also ordered Martinez to pay for his DNA testing.

## DISCUSSION

¶14      We review the entire record for reversible error.  *State v. Thompson*, 229 Ariz. 43, 45, ¶ 3 (App. 2012).  Counsel for Martinez has advised this court that after a diligent search of the entire record, counsel has found no arguable question of law.  However, in his supplemental brief, Martinez raises several issues, which we address in turn.

¶15      Martinez argues that A.G.'s prior inconsistent statement regarding when Martinez started shooting at her car warrants relief from his convictions.  The "credibility of witnesses and the weight and value to be given to their testimony are questions exclusively for the jury."  *State v. Clemons*, 110 Ariz. 555, 556-57 (1974).  Here, the jury was responsible for assessing A.G.'s credibility and deciding what narrative to believe.  In fact, counsel for Martinez impeached A.G.'s credibility with the same statement, which is the proper trial tactic to address a prior inconsistent statement.  *See* Ariz. R. Evid. 801(d)(1)(A).  We find no error.

¶16 Martinez also asserts that had the police impounded the cars for further testing, taken measurements at the scene of the first accident, and properly retained the photos of the scene, the jury would have returned not-guilty verdicts on all counts. "[A]bsent bad faith on the part of the state, the failure to preserve evidentiary material which could have been subjected to tests, the results of which might have exonerated the defendant, does not constitute a denial of due process of law under the Arizona Constitution." *State v. Youngblood*, 173 Ariz. 502, 508 (1993); *see also Arizona v. Youngblood*, 488 U.S. 51, 58 (1988) (holding the same under the United States Constitution). Nevertheless, the defendant is entitled to a *Willits* instruction, which instructs the jury that if they find the State's explanation for the loss or failure to preserve evidence inadequate, "they may draw an inference that [the] evidence would have been unfavorable to the state." *Youngblood*, 173 Ariz. at 506. Here, the evidence might have aided Martinez, and there is no evidence of bad faith on the part of the police. According to the State, the photos were lost in a change of their records management system and the police simply did not think that it was necessary to further investigate the cars or initial scene. The parties argued the significance of the lost evidence, and the court gave a *Willits* instruction to the jury. Therefore, there was no denial of due process on this basis. *See Youngblood*, 173 Ariz. at 506-07.

¶17 We have read and considered counsel's brief and fully reviewed the record for reversible error, *see Leon*, 104 Ariz. at 300, and find none. All of the proceedings were conducted in compliance with the Arizona Rules of Criminal Procedure. So far as the record reveals, counsel represented Martinez at all stages of the proceedings, and the sentences imposed were within the statutory guidelines, except for the portion requiring Martinez to pay for his DNA testing. In *State v. Reyes*, we held that "[t]he legislature did not direct that convicted felons pay the cost of the testing." 232 Ariz. 468, 472, ¶ 11 (App. 2013). Therefore, "because [A.R.S.] § 13-610 does not require a convicted defendant to be assessed the cost of his DNA testing, there was no basis for the provision to be imposed" and the order that Martinez pay for his DNA testing must be vacated. *See id.* at ¶ 14. Accordingly, we decline to order further briefing and affirm Martinez's convictions and sentences, but vacate the portion of the sentencing order requiring Martinez to pay for his DNA testing. *See id.* (vacating DNA payment portion of sentence).

¶18 Upon filing of this decision, defense counsel shall inform Martinez of the status of the appeal and of his future options. Counsel has no further obligations unless, upon review, counsel finds an issue appropriate for submission to the Arizona Supreme Court by petition for

review.  *See State v. Shattuck*, 140 Ariz. 582, 584-85 (1984).  Martinez shall have thirty days from the date of this decision to proceed, if he desires, with a *pro per* motion for reconsideration or petition for review.

## CONCLUSION

**¶19**         For the foregoing reasons, we affirm Martinez's convictions and sentences, but vacate the portion of the sentencing order requiring Martinez to pay for his DNA testing.



AMY M. WOOD • Clerk of the Court
FILED:  AA